## RAY W. WILLOUGHBY ET AL V. ERNEST JONES ET AL

No. A-3490. Decided October 1, 1952.
Rehearing overruled October 29, 1952.
(251 S. W., 2d Series, 508.)

436

*Alfred E. Creigh, Jr.,* of Alpine, *Upton, Upton, Baker & Griffis* and *H. C. Upton,* all of San Angelo, for petitioner.

The Court of Civil Appeals erred in holding that, after entry of summary judgment in petitioner's (Willoughby) favor the burden was upon him to bring up the record showing that the lands in controversy were the same as those involved in the prior suit, and in failing to hold that the burden was upon the respondence (Jones) to show that the lands were *not* the same as those involved in the prior suit in the same court and between the same parties. Said court also erred in failing to hold that the Joneses were estopped to dispute the sufficiency of the description of the land set out in the liens admittedly executed by them and theretofore foreclosed by the judgment in the cause of Willoughby v. Jones. Uvalde Const. Co. v. Joiner, 132 Texas 593, 126 S.W. 2d 22; McElyea v. Parker, 125 Texas 225, 81 S.W. 2d 649; Jasper State Bank v. Braswell, Com. App., 111 S.W. 2d 1079.

*E. B. O'Quinn,* of Marfa, for respondent.

In response cited King v. Rubinsky, 241 S.W. 2d 220, error refused; Kaufman v. Blackman, 239 S.W. 2d 422, error refused; Small v. Lange, 239 S.W. 2d 441.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Petitioner, Ray W. Willoughby, who (with the sheriff of Brewster County) was a defendant below, was granted a summary judgment, which was reversed by the Court of Civil Appeals (over a dissent) on the ground that a fact issue was involved, the cause being remanded for trial. 245 S.W. 2d 341. The suit was a combined action of (a) trespass to try title to some 47,000 acres of land in Brewster County, (b) for removal of a cloud on the title thereto consisting of certain first and second lien deeds of trust held by the defendant-petitioner and a foreclosure judgment thereon in his favor against the plaintiff-respondents Jones, as well as (c) for $500,000 damages in the way of profits which the plaintiff-respondents would have made by selling the land but for the negligence of petitioner and the sheriff in holding the foreclosure sale when they should have known the foreclosure decree to be void for insufficiency of description of the premises. The foreclosure judgment (under which petitioner, Willoughby, as plaintiff, became the purchaser) was rendered in Cause No. 2525 in the same court in which the instant suit was filed and adjudicated. It was not appealed. Plaintiff-respondent, E. B. O'Quinn, Esq., was attorney for the plaintiff-respondents Jones as defendants in that suit but was not a party, his present alleged half interest

in the premises having been acquired from the Jones' after the foreclosure sale.

1 As above indicated, the basic claim of the plaintiff-respondents in the present suit is that the deeds of trust, foreclosure decree and sheriff's deeds to petitioner in Cause No. 2525 were all void either in whole or part by reason of insufficiency of description of all or part of the land, under the rule that even an otherwise valid judgment may be void in respect of title to land if in it the land is not adequately identified. Greer v. Greer, 144 Texas 528, 191 S.W. 2d 848. There is no contention that the earlier judgment was invalid in respect of the adjudication of the large indebtedness of the respondents Jones to the petitioner or the further adjudication that such debt was secured by the deeds of trust in question. Although admittedly the petitioner upon his foreclosure purchase went into possession of the lands described in the petition of the respondents in the present case and is still in possession, respondents have not made a tender of the mortgage debt, which, at least in the ordinary case of a mortgagee in possession under a foreclosure void as to the mortgagor-plaintiff, would be a necessary prerequisite for a successful title action by the latter against the former. Jasper State Bank v. Braswell, 130 Texas 549, 111 S.W. 2d 1079, 115 A.L.R. 329; Connor Bros. v. Williams, 130 Texas 572, 112 S.W. 2d 709.

The petition of the respondents in the present case described the land in suit by reference incorporation of three recorded deeds (executed in 1945 and 1946) to the respondents, Jones, from Morris, Reeder and Purnell (and their wives) respectively, but did not, by means of exhibits or otherwise, include any part of the texts thereof. It did, however, specifically allege common source of title either in said respondents or their abovementioned grantors, by reason of these deeds and the foreclosure proceedings in Cause No. 2525, and stated on oath that in this behalf certified copies of all these documents were filed in court with the petition. The latter also made specific reference to the foreclosure judgment and sheriff's deeds as clouds on the title of plaintiff-respondents to the premises sued for.

The petitioner's motion for summary judgment (following an unsworn answer, which need not be further noticed) was unverified and unsupported by affidavits, texts of documents, or other proof except as the latter might exist in the pleadings of the respondents or other matters of record which the trial

court should properly consider. The motion did, however, by specific references to the petition of respondents and to existing records of the court, invoke the judgment and sale to petitioner in Cause No. 2525 as concluding all possible issues between the parties, and by similar references made also the defense of "mortgagee in possession". The summary judgment is in general terms but doubtless rested on one or more of these defenses.

On the appeal of respondents, the instant case acquired additional complications, because the only record brought up (aside from formal matters) consisted of the petition, answer, motion, and summary judgment, so that, whatever the trial court may have considered, the Court of Civil Appeals could thus read and consider only references to the documents heretofore mentioned and nothing approaching a complete description of their contents. Over the objection of the dissenting justice, the court, on the strength of Rule 428, Tex. R. Civ. Proc., ordered copies of the documents sent up, including the judgment in Cause No. 2525, the related notices of sale, sheriff's deeds to petitioner, etc., and the three deeds to respondents, Jones, from Morris, Reeder and Purnell, respectively. The court later decided that only the judgment in Cause No. 2525 was part of the trial court record and could be considered, but considering it, and refraining from considering the descriptions in the deeds, held that, on the record, there was a genuine fact issue as to whether the land sued for was the same as that foreclosed upon by the petitioner. Had the court considered the deeds as part of the record, it might conceivably have reached a contrary result, though this is less than certain in the light of language found in the concurring and dissenting opinions.

2 It may somewhat clarify matters, if at this point, without prejudice to the procedural questions involved, we examine the contents of the documents sent up in response to the court's order, including the deeds not considered by it. The judgment in Cause No. 2525 (as well as the related pleadings, orders of sale, notices, and sheriff's deeds) referred to the lands there involved as three tracts, numbered respectively I, II, and III and respectively containing 4501 acres, 19,488.95 acres, and 23,436.3 acres (corresponding exactly to the respective total acreages in the three deeds). For sole particularized description, it contains an exhibit, in the form of a list of references to the numerous units or component surveys of relatively small

acreage making up the three respective major tracts as generally exemplified by the following first ones given for such tracts:

"I.

| ABSTRACT NUMBER | SURVEY NUMBER | CERTIFICATE NUMBER | BLOCK NUMBER | NUMBER ACRES |
|---|---|---|---|---|
| 1085 | East Part 10 | 1064 | 233 | 278.3 |

———O———

II.

| ABSTRACT NUMBER | SURVEY NUMBER | CERTIFICATE NUMBER | BLOCK NUMBER | NUMBER ACRES |
|---|---|---|---|---|
| 3055 | N.E. Part 23 | 1071 | 233 | 100 |

———O———

III.

| ABSTRACT NUMBER | SURVEY | CERT. | BLOCK | ORIGINAL GRANTEE | NUMBER ACRES |
|---|---|---|---|---|---|
| All | 9 | 1064 | 233 | T. & St. L. Ry. Co. | 666.3" |

Similarly to the case of Survey 9, Block 233, last quoted, the great majority of these references to component surveys are clearly intended to indicate (either by the word "All", or by the omission of limiting words such as "part") an entire survey, so that the mere survey and block numbers together are a sufficient description in each instance and add up to a good description for the bulk of the total acreage (about 47,000) of the three major tracts. The remaining component units, while each is assigned a specific acreage, are referred to as mere directional "parts" of specific surveys. Of these a large number is also referred to by the Land Office abstract number (such as the first two above quoted) while the rest have no abstract reference. As to these "parts" of surveys, no doubt the identify of the ones of which the abstract numbers are given should be taken as ascertainable by reference under Reserve Petroleum Co. v. Harp, 148 Texas 448, 226 S.W. 2d 839, although there was nothing before the trial court to indicate what the corresponding Land Office records show. As to the remaining "parts" —those which carry no abstract reference—the description as given in the foreclosure judgment seems of dubious validity, even considering the exact specifications of survey number and acreage.

But, when we examine the Purnell, Reeder and Morris deeds to respondents Jones, reference to the record of which is the only way whereby the petition of respondents identifies the land in suit, we find: First, as to all the large number of entire component surveys, the descriptions in these three deeds and in the foreclosure proceedings are identical (as well as legally sufficient); secondly, in the Purnell and Reeder deeds, the entire descriptive portions (consisting of many references to complete component surveys and several to mere "parts") are identical respectively with the descriptions under "Tract I" and "Tract II" in the foreclosure judgment to which the petition also refers. Thus, if we may consider the contents of the deeds as well as those of the judgment, we can say of the component units referred to as entire surveys (the bulk of the land in suit) that the petition of respondents clearly shows title to have passed to the petitioner by the foreclosure. And we may say what amounts to the same thing regarding the "parts" referred to in the judgment which are also found in the Purnell and Reeder deeds. If these descriptions are inadequate as part of the foreclosure, they are certainly no less so in these deeds to which respondents refer for description of the premises and on which their petition discloses them to rely for proof of their title. If they are adequate, the respondents lost title by the foreclosure. So, if we may but look at the three deeds, we see that respondents have no cause for action in respect of lands described in any of them as an entire component survey, or in respect of anything described in the Purnell and Reeder deeds, the descriptions in these latter, both as to entire component surveys and "parts", being respectively identical with Tracts I and II as described in the judgment.

**3** The situation is somewhat different in respect of those "parts" of surveys referred to in the judgment under "Tract III" and in the corresponding deed from Morris to respondents Jones. The primary section of the descriptive portion of this deed duplicates "Tract III" as described in the judgment, including, as stated, the specification of total acreage (23,436.3) and that of each component unit, whether an entire survey or "part" thereof, but a secondary section, not found in the judgment, adds what appears to be a good metes and bounds description of each "part" listed in the primary section. And yet, if we look at both instruments together, we cannot escape concluding that, whatever the judgment actually described as to these "parts", it intended to describe the very land described (adequately) in the deed. It is conceivable, of course, that the judgment meant,

for example, one specific area of 615.2 acres in the "N.W. part, Survey 11, * * * Block 240", while the deed, by these same words *plus* its corresponding metes and bounds description, meant a somewhat differently shaped or located area of 615.2 acres in the "N.W. part, Survey 11, * * * Block 240", but this appears quite unlikely, and still more so in the absence of specific allegations to that effect. The petition of respondents appears to mean that the description in the judgment describes nothing at all, rather than *something* different from what the deed describes. And if the judgment does describe nothing, considered alone, it is yet logically possible to say from a consideration of both instruments together that the land fully identified in one is the same as that *intended* to be described in the other. So, considering the petition and the documents to which it refers, we must take the respondents to admit that the foreclosure judgment (as well as the underlying deeds of trust) intended to, even if it failed to, describe the identical lands for which respondents sue. This conclusion is strengthened by their claim that the judgment clouds the title to the lands in suit and by the allegations of common source as shown by the Morris deed and the foreclosure judgment. A void mortgage on "lot A" is hardly a cloud on the title to "lot B". A title plaintiff does not show common source by a deed to himself of Blackacre and a deed to the defendant of Whiteacre.

4 Still subject to the procedural questions alluded to, we may say from the foregoing that the respondents have no right to recover. Clearly this is so of lands described in any of the three mentioned deeds as entire surveys, as well as of those "parts" of surveys referred to in the Purnell and Reeder deeds. As to the only remaining lands or purportedly described lands involved, that is, the relatively few "parts" which are listed under "Tract III" in the judgment and which, from the respondents' petition we take as intending to describe the corresponding "parts" described in the Morris deed, we think the petitioner may, as he contends, assert the defense of a mortgagee in possession. Accordingly, as the respondents have made no tender of any part of the mortgage debt, but, on the contrary, have waived their right to do so, they should suffer judgment also in this final particular.

5 Were the case one of a foreclosure, perfectly describing the land but void on some ground such as defective service of process, the status of petitioner as a mortgagee in possession would undoubtedly obtain. Jasper State Bank v. Braswell, cited earlier

herein, was a case of that general type. There is, of course, a difference where the defect in the foreclosure is one of description of the premises, but it would be erroneous to say broadly that there can be neither mortgage nor foreclosure where there is a faulty description, or that it is impossible for the "mortgagee" to be in possession as mortgagee, when his mortgage or foreclosure judgment does not identify the land possessed. While, indeed, misdescription is a familiar instance in which specific performance is refused on account of the Statute of Frauds, An. Civ. St. Art. 3995, as for example, in Matney v. Odom, 147 Texas 26, 210 S.W. 2d 980, and sundry decisions cited for respondents, it is an equally recognized field for reformation of mortgages (and deeds) on grounds of mistake, fraud or accident; and this, although, obviously enough, the result often is to give effect to an intended description theretofore existing only in the minds of the parties, and not corroborated by special circumstances such as contemporaneous transfer of possession of the intended premises to the mortgagee. See citations in 36 Tex. Jur., "Reformation of Instruments," § 12, p. 36 et seq. The same treatise, §§ 5-6, reflects our established practice of combining in one action reformation and relief on the instrument as reformed, so that actually the suit is but "technically a reformation suit." From the circumstances above-mentioned, it conclusively appears that the omission from the foreclosure judgment of whatever elements might be lacking in the description of the "parts" of particular surveys (under "Tract III") was a case of mistake, for which reformation and re-foreclosure would undoubtedly be available to the petitioner in the instant controversy, the latter being between the same persons who were parties to the foreclosure, with the immaterial exception of Mr. O'Quinn. The position of the petitioner has been described by good authority as that of an equitable mortgagee, whose rights to the premises intended to be mortgaged (though deficiently described) prevail over those of a creditor attaching after the legally inadequate instrument was executed but before the description was reformed by equitable decree or voluntary action of the parties to it. Osborn on Mortgages (1951) § 32, Notes 16-19, including the cited decisions in Welton v. Tizzard, 15 Iowa 495; Rea v. Wilson, 112 Iowa 517, 84 N.W. 539; Rhodes v. Outcalt, 48 Mo. 367. That in the instant case between the mortgagor and mortgagee, the latter has not gone through the formality of alleging mistake, when the mistake is clear from the petition itself, or of specifically asking for reformation, when such is but an intermediate or "technical" step in his ultimate defense, should not be fatal to the latter. And considering the petitioner an equit-

able mortgagee, we further conclude it to be both logical and just to extend to him the benefits clearly appertaining to legal mortgagees in possession.

Regarding the failure of respondents to tender any part of the mortgage debt, we need not afford them any further opportunity in this behalf, even assuming that we could somehow arrive at a proper part to correspond with the relatively small part of the lands as to which respondents may have had a right of recovery subject to tender. In the face of the express plea of petitioner (in his motion) that he was in any event in the position of a mortgagee in possession, respondents yet failed to make a tender, and we may therefore conclude that they waived any rights to do so at a later stage of the litigation.

**6** Coming now to the postponed questions, we agree, of course, with the unanimous view below that a summary judgment is not necessarily out of order where the corresponding motion is unverified and unsupported by affidavits. Rule 166A, Tex. R. Civ. Proc.; 4 McDonald, Texas Civil Practice, § 17.26, p. 1386 et seq. If by reference to the pleadings of the respondents in the instant case and other records which the trial court might properly notice, there was ground for a judgment as a matter of law for the movant (petitioner here) summary judgment was proper. 4 McDonald, op. cit., supra, p. 1394, Note 34.

**7** The critical question relates to the record, that is, what the trial court and the Court of Civil Appeals were entitled to consider. The conclusion in the opinion of the latter court—that the summary judgment was improper because a fact issue existed as to identity between the land sued for and that foreclosed on by petitioner—rests on these premises: (a) That under Rule 428, supra, whatever the trial court could or should have considered could properly be brought up on motion of the appellate court itself as part of the record, even though the appellant had failed to bring up a record from which the errors alleged might be demonstrated; (b) that the foreclosure judgment was thus properly considered and brought up, since it was part of the record in the summary judgment proceeding, being an earlier record of the same court and one which accordingly should be regarded as fully set out in the petition of respondents, although actually mentioned therein only by reference; (c) that the above-mentioned deeds to respondents Jones were, on the contrary, not subject to consideration (or consequent comparison with the judgment) by the trial court and formed no part of the rec-

ord there or in the appellate court, because they were not part of any prior proceeding in the former or exhibited to it otherwise than by the general reference to them in respondents' petition in the instant suit and by the filing of certified copies for purposes of common source under Rule 798, supra.

While premise (a) above is no doubt correct (whatever may have been the law prior to the adoption of Rule 428) and while we also agree that the judgment in Cause No. 2525 was part of the record in the trial court, we cannot agree that the deeds were not. The judgment, as filed by respondents among the papers in the case, was in effect part of respondents' petition which purported to incorporate it. Rule 59, Tex. R. Civ. Proc., uses the words "or filed and referred to as such" as alternative to attaching a document to or copying it into the pleading concerned. That the particular portion of the petition, which spoke of filing the judgment, alleged it to be filed under Rule 798, supra, would not restrict its incorporation into the petition for general purposes, since the petition elsewhere makes reference to it without limitation of purpose. To hold otherwise would, indeed, "exalt form over substance", and this even though the judgment were not already a part of the trial court's own records and thus subject to judicial notice of that court, as it was under decisions such as Victory v. State, 138 Texas 285, 158 S. W. 2d 760. Nor is Blum v. Moore, 91 Texas 273, 42 S.W. 856, 857, authority to the contrary. Our records of that case show that the deed of trust referred to in the pleading there in question was not filed, and since it was not part of the trial court's earlier records, nor copied in nor attached to the pleading, we held that the trial court could not "go out of the record to ascertain the contents * * *." As to the deeds, the same reasoning generally applies, although, unlike the judgment, they were not part of the trial court's records until filed by respondents in the instant case. The petition of respondents, wholly apart from its reference to common source, purported to incorporate these deeds for all purposes. The defendant-petitioner also asked the court to consider them. They were on file. It would again "exalt form over substance" to say that the trial court could not consider them as part of the petition. The provision in Rule 798, supra, that the certified copies filed by the title plaintiff in order to show the claim of the defendant under the common source, "shall not be evidence of title in the defendant unless offered in evidence by him", by its very terms denies its application to these deeds, which do not reflect the claim of the defendant but that of the plaintiff. And even where the common source proof in

question is that showing the claim of the title defendant (as did the *judgment* in the instant case) and is not re-introduced by him, if it together with the proof of the plaintiff's claim shows that the plaintiff has no title, it may be a basis of judgment against the latter. Hovel v. Kaufman, Tex. Com. App., 280 S.W. 185,187; Tate v. Johnson, Tex. Civ. App., 140 S.W. 2d 288,289, error. dism. judgmt. correct. Since, therefore, both the deeds and the judgment were part of the trial court record, and since, for the reasons heretofore given, a comparison of them demonstrates that the suit of respondents as a matter of law should fail, the summary judgment for petitioner Willoughby was correct and must be affirmed, while the judgment of the Court of Civil Appeals to the contrary must be reversed. It is so ordered.

Opinion delivered October 1, 1952.

Rehearing overruled October 29, 1952.