Bob FRY, Appellant,

v.

HUGHES TOOL COMPANY, Inc., Appellee.

No. 3411.

Court of Civil Appeals of Texas.

Eastland.

Nov. 7, 1958.

Rehearing Denied Nov. 21, 1958.

Bradbury, Tippen & Brown, Abilene, for appellant.

Scarborough, Black & Tarpley, Abilene, for appellee.

GRISSOM, Chief Justice.

Hughes Tool Company sued Bob Fry for possession of drilling bits left with Fry, who was a welder, by drilling contractors who had leased them from Hughes. A summary judgment was rendered for Hughes and Fry has appealed.

Hughes' motion for a summary judgment for title and possession of the bits contained allegations that there was no issue of fact; that the bits were leased by Hughes under certain agreements and that the lessees had no authority to deliver possession to any one other than Hughes; that Fry had no right to possession thereof and Hughes had not authorized Fry to take possession or to repair the bits.

In support of said motion the affidavit of Mr. McCauley, the District Manager for Hughes, was attached. He swore he was Hughes' highest ranking official in the area; that Hughes' bits were leased but never sold; that no one had authority to retip bits or take possession from its lessees and that neither he nor any of Hughes' employees gave Fry authority to take possession of or retip the bits taken from Fry in November, 1957, and that neither he nor

any one else had authority to authorize Fry to do so. There was also attached the affidavit of Mr. Johnson, a special investigator for Hughes, who swore that Hughes' bits were never sold but they were leased; that no employee of Hughes had authority to alter the lease or to agree that the bits might be surrendered to any one but Hughes or that retipping or any other service might be performed thereon by anyone other than Hughes. There was also attached invoices and delivery reports signed by lessees of the bits, who had taken them to Fry to be retipped. For each bit or group of bits a lessee signed two instruments, each of which contained the following provision:

"Hughes Roller Rock Bits and all Core Bit Heads are never sold but are leased. When the original cutter teeth and/or bearings have served their useful life, the user will surrender the bits to Hughes Tool Company upon request. In accepting delivery, the user agreed not to surrender any of the tools as mentioned above to other than a duly authorized representative of the Hughes Tool Company."

Fry's answer to Hughes' motion was that he was a welder who specialized in repairing oil field equipment; that he was a bailee for the "purpose of reconditioning the drilling bits left in his custody by— oil well drilling contractors, which contractors are lessees of drill bits, having leased the same from * * * Hughes Tool Company." Fry alleged he was entitled to the present possession; that Hughes was a lessor who had failed to show termination of the lease or any present rights to the reversion; that Hughes' only right to possession was under the lease quoted from; that both he and Hughes were relying upon said lease and there were controlling fact questions which must be submitted to a jury to determine his rights thereunder. He alleged Hughes would have a right to possession only upon proof that the bits were "surrendered" to Fry; that surren-

der was an ambiguous term to be interpreted by a jury in the light of the circumstances; that the bits were not surrendered to him but he had temporary custody for the purpose of servicing them. He alleged that whether Hughes had a present right to possession by virtue of a "surrender" to him is a controlling fact question which must be submitted to a jury; that the only way Hughes could have a present right to possession would be to show that the teeth or bearings of the bits had "served their useful life", plus a "request" by Hughes to the lessee to redeliver the bits to Hughes; that, since reasonable minds could differ as to when the teeth or bearings had "served their useful life", and thus matured Hughes' right to demand repossession, is a fact question and whether Hughes made such a request, and thus matured his right to present possession under the "useful life" sentence of the lease, was also a fact question.

With reference to estoppel, Fry in his answer to Hughes' motion for a summary judgment alleged only that Hughes was estopped to deny his right to temporary possession; that the issue of estoppel was factual and determinative of the case. He alleged no facts therein relative to estoppel but referred to affidavits attached to his answer in Hughes' motion. He attached the affidavit of Mr. Bigham, a welder employed by Fry. Bigham swore that for three years he had worked for Fry partly on drilling bits brought there by drilling contractors; that some of them were Hughes' bits leased by Hughes to drilling contractors; that when a bit was brought in they looked at it to see if it could be repaired; that if it was a worn out Hughes' bit they put it aside "because John McCauley (Hughes' District Sales Manager) and other Hughes' men come by and pick up these worn out bits." Bigham said that in September, 1956, he was working on a Hughes' bit when a "special investigator from Hughes * * * came by to inspect our shop. He saw that we kept careful records and accounts of the bits delivered to us, returning the exact bit, after repairs, to the driller who brought it in. Bob Fry came in while this special investigator was there. Sid Johnson, another investigator for the Hughes Tool Company, was also present on this occasion but he went out to the car before the other investigator left. Bob Fry and this other special investigator for Hughes discussed the way that Fry was conducting his business and this special investigator told me to go back to work welding. Since I was at that very time working over a Hughes' Drilling bit and this investigator knew what I was doing, Fry and I got the impression that Hughes agreed with the drilling contractors that it was okay if we repaired those leased Hughes' drill bits." Mr. Fry's affidavit was also attached. He swore that some of the bits brought to him were leased to drillers by Hughes; that he sharpened the drill teeth, built up the teeth and cleaned and oiled the bits. He also swore that "when the Hughes' men come by they, of course, know that we are retipping bits on the inside. It is my understanding that Hughes Tool Company can claim the bits only if they have become valueless to the drillers who lease them, since the drillers take the bits for their useful lives. Of course, I have relied on what the drillers tell me about their arrangement with Hughes, plus the fact that Hughes has formed the habit of picking up the worn out bits from my shop. I have never made any claim to ownership of drilling bits leased by Hughes Tool Company. I have only temporary custody of these bits keeping them for the purpose of sharpening and building up the teeth and cleaning and oiling the bits. I have kept careful records listing the serial numbers of each bit delivered to me and have returned the same bits to each driller after rendering my services. If the bit is worn out and cannot be repaired then I stack it outside with the other worn out bits and Hughes Tool Company picks them up. From the fact that Hughes picked up the 'junkers' or worn out bits at my shop I

got the idea that they had no objection to the dealers leaving the bits to be repaired by me so long as I kept good records. Hughes had itself sent work to be done at my shop. In addition to repairing bits for Hughes Tool Company, which made me think they approved of my work. One of their special investigators came by on or about September 24, 1957, and told me that what we were doing was all right so long as we kept good records. This special investigator had a badge indicating that he was an investigator for the Hughes Tool Company and I certainly thought anything he told me would be in line with the company policy. John McCauley, the top man for Hughes in this area, has himself come over to my shop and picked up a number of worn out bits which I saved for him and I thought, as did the drilling contractors who left the bits with me, that we had the right to repair those bits which still have a useful life if we keep very accurate records, which we do, so as to deliver the same bit back to the driller who brought it in, and save the 'junkers' for the Hughes Tool Company." The affidavit of Mr. Rea, a drilling contractor, was also attached but, other than his statements that he leased bits from Hughes and had them reconditioned and the teeth built up by Fry, there is nothing in his interpretation of the lease and what he thought which could be admissible.

Appellant's points are that the court erred in granting Hughes' motion for a summary judgment because (1) controlling fact issues were presented and (2), as a matter of law, Hughes did not have the right to possession of the bits. He argues that Hughes' right to possession depends upon either an unauthorized surrender of the bits to Fry, or because the teeth and bearings of the bits had "served their useful lives." He says that surrender is an ambiguous term and whether useful life remained was a jury question and that the uncertainty of the lease required that a jury construe it.

We think Fry's said contentions have been foreclosed by the decisions. In Shosid v. Hughes Tool Co., Tex.Civ.App., 258 S.W.2d 945, 948 (RNRE), the court said:

"Point 3 questions lessee's right to the bits since under the Hughes Tool Company's lease the right of possession continued in the lessee throughout the useful life of the bit or bits covered by the lease agreements and therefore Shosid, holding under lessee was under the duty not to surrender the bits to Hughes Tool Company. The lease provided, however, that lessee should not surrender the bits '* * * to other than a duly authorized representative of Hughes Tool Company.'

\*     \*     \*     \*     \*     \*

"When the useful life of the bits ceased, Hughes Tool Company was entitled to possession of the bits. However *this was not Hughes Tool Company's only right to possession. Under the terms of the lease the lessee had no right to pass possession of the bits* to Shosid, Shosid's vendors, or any other person through whose hands the bits passed after leaving the lessee's possession until they passed into Shosid's possession. *The* lessee or *lessees when they parted with possession of the bits by their voluntary act, breached the terms of the lease and were liable* at Hughes Tool Company's option for such damages or other remedy *for breach of the lease* and also, at the option of Hughes, for conversion of the bits. *In addition, each party through whom possession of the bits passed was liable to Hughes Tool Company for conversion* of the bit or bits, or for the loss of the bit or bits in a suit for title to the same. Kimbell Milling Co. v. Greene, supra [141 Tex. 84, 170 S.W.2d 191]. Point 3 is overruled." (Emphasis ours.)

In Hughes Tool Company v. Owen, 5 Cir., 123 F.2d 950, 953, the court said:

" * * * there was no selling here but a leasing, and * * * under the terms of the lease, the licensee had no right, and therefore defendants had none, to retip or rebuild the teeth."

See also Williams v. Hughes Tool Company, 10 Cir., 199 F.2d 862, and Robertson Rock Bit Company v. Hughes Tool Company, 5 Cir., 176 F.2d 783. Under said decisions said contentions must be overruled.

 We have also considered appellant's contention that issues of fact were presented in support of his plea of estoppel. We have concluded that when the affidavits are reduced to the facts stated that affiants could testify to on a trial no issue was presented. Texas Rules of Civil Procedure, rule 166–A(e); Fonville v. Southern Materials Co., Tex.Civ.App., 239 S.W. 2d 885; Statham v. City of Tyler, Tex.Civ. App., 257 S.W.2d 742 (RNRE); Edwards v. Williams, Tex.Civ.App., 291 S.W.2d 783 and Sparkman v. McWhirter, Tex.Civ. App., 263 S.W.2d 832 (Writ Ref.).

Judgments were rendered in three cases in 1953, 1954 and 1955 in the same trial court between Fry and Hughes in each of which Hughes recovered from Fry possession of its bits. It appears that Fry's lack of right to have Hughes' bits in his possession and Hughes' right to take them from him have been adjudicated. In Victory v. State, 138 Tex. 285, 158 S.W.2d 760, 763, the court said:

"The trial court in the present case entertained the opinion that the prior suit was conclusive as to the validity of the tax assessment for the year 1932 upon the doctrine of res judicata even though the former judgment was not pleaded in bar of the instant suit. It is the established law of this state that courts may take notice of their own records and a former judgment may be held to be conclusive in a sub-sequent action when the record shows a judgment rendered in a cause involving the same subject matter between the same or practically the same parties, even though no plea of res adjudicata was interposed in the subsequent suit."

See also Willoughby v. Jones, 151 Tex. 435, 251 S.W.2d 508, 514; Cochran County v. Boyd, Tex.Civ.App., 26 S.W.2d 364, 365 (Writ Ref.); Womble v. Atkins, Tex. Civ.App., 314 S.W.2d 150, 152.

The judgment is affirmed.