Affirmed and Memorandum Opinion filed August 7, 2007








Affirmed and Memorandum Opinion filed August 7, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00973-CV

_______________

 

CHOICE ACQUISITIONS NO. TWO INC. AND LIOR AVNI,
Appellants

 

V.

 

HECTOR NOESI AND JOSEFINA ALCANTAR, Appellees

                                                                                                                                               


On Appeal from the 295th District Court

 Harris County, Texas

Trial Court Cause No. 2006-09571

                                                                                                                                               


 

M E M O R A N D U M    O P I N I O N

Appellant Choice Acquisitions No. Two
Inc. (AChoice@) owned an interest in an apartment
complex in Houston before a foreclosure in 1992.  Fourteen years later, Choice
and a purported shareholder sued the current owners to claim ownership of the
property.  After cross-motions for summary judgment, the trial court ruled in
favor of the current owners, appellees Hector Noesi and Josefina Alcantar.  We
affirm. 

 








I.  Factual
and Procedural Background

The suit is a trespass to try title
concerning an apartment complex known as the Red Apple Apartments, located at
9005 Long Point Road in Houston, Texas (the AProperty@).  The chain of title relevant to
this appeal is as follows:

A.        Royce
Hopkins, Trustee (the common source of title) conveyed the Property to
Investment Choices Corporation, Trustee, by warranty deed with vendor=s lien dated December 1, 1988 for
consideration including two notes totaling $300,000 (one in the amount of
$237,922.49 and the other in the amount of $62,076.51) payable to Hopkins as
trustee.[1]  To secure
payment of the notes, the conveyance was made subject to the vendor=s lien and by a deed of trust to
Harry B. Oakes, Trustee.  The deed of trust identifies the beneficiary as Royce
Hopkins, Trustee, and was executed by David A. Newman, President of Investment
Choices Corporation, Trustee.[2]

B.        By
deed dated December 29, 1988, Investment Choices conveyed the Property to a
group of purchasers consisting of Norman Sadowsky, Erica Sadowsky, Amnon
Gilaad, Roslyn Gilaad, Menachem Darwish, Pnina Darwish, and appellee Choice
Acquisitions No. Two Inc.  The conveyance was made by warranty deed with vendor=s lien and was made subject to the
deed of trust.[3]  The warranty
deed states, AThe vendor=s lien against and the superior title to the property are
retained until each note described is fully paid according to its terms, at
which time this Deed shall become absolute.@ 








C.        Investment
Choices defaulted on the notes.  Hopkins appointed Jack A. Wells as Substitute
Trustee, and on April 7, 1992, Wells foreclosed on the deed of trust securing
the notes.[4]  Choice
Acquisitions had no further ownership. 

D.        On
the same day, Wells conveyed the Property to Hopkins, in his capacity as
trustee, by substitute trustee=s deed.

E.         By
warranty deed with vendor=s lien, Hopkins, in his capacity as trustee, conveyed the
Property to himself in his individual capacity.

F.         Also
on April 7, 1992, Hopkins conveyed the Property to Tavit Cakirdas, Trustee, via
warranty deed with vendor=s lien.

G         On
March 19, 1994, Tavit Cakirdas, Trustee, executed a $250,000 note to Hopkins. 
To secure the note, he executed a deed of trust naming Hopkins as the
beneficiary and Jack A. Wells as trustee).  

H.        Cakirdas
defaulted and Wells foreclosed.

I.          Wells
conveyed the Property to Hopkins by trustee=s deed dated August 2, 1994.  

J.         Hopkins
next conveyed the Property to Richard Hylton by warranty deed with vendor=s lien dated August 31, 1994.[5]


K.        On
October 31, 1996, Hylton conveyed the Property to Tu Washington Nguyen by
special warranty deed. 

L.         Nguyen
conveyed the Property to Red Apple Apartments, Inc. by general warranty deed
with vendor=s lien on July 8, 1997.








M.       Red
Apple conveyed the Property by general warranty deed with vendor=s lien deed dated June 9, 1998 to
Martin A. Mcdonald, Jr.

N.        McDonald
conveyed the Property to G-J Curtis Properties, L.L.C. by special warranty deed
with vendor=s lien dated effective June 12, 2000 (and by correction warranty deed
dated June 6, 2001, effective June 12, 2000).

O.        G.
J. Curtis conveyed the Property to appellees Hector Noesi and Josefina Alcantar
by general warranty deed dated May 24, 2004. 

Appellants Choice Acquisitions No.
Two Inc. (AChoice@) and Lior Avni sued Noesi and Alcantar (the AOwners@) on February 15, 2006, alleging that
Choice and Avni are the true owners of the Property.  Choice moved for
traditional summary judgment on May 30, 2006, and the trial court denied the
motion on July 6, 2006.  The Owners filed an amended traditional motion for
summary judgment on September 12, 2006, on the grounds that (a) the chain
of title affirmatively disproves appellants= claim to the Property; (b) the
Owners acquired title to the Property by adverse possession under title or
color of title, and thus, appellants= claims are time-barred under the
three-year statute of limitations; and (c) appellants= claims are also time-barred under
the five-year statute of limitations.

On October 9, 2006, the trial court
overruled appellants= objections to the Owners= summary judgment evidence, sustained
the Owners= objection to an exhibit[6] offered by
appellants in response, and granted summary judgment in favor of the Owners. 

On November 20, 2006, the trial court
severed the judgment from the Owners= remaining counterclaims.








II.  Issues Presented

Appellants= brief does not correspond to the
issues presented;[7] however, in
three preserved issues, appellants argue that the Owners= summary judgment should be reversed
and judgment rendered in appellants= favor because (a) the Owners
failed to offer competent summary judgment evidence; (b) three prior
conveyances fail to warrant title, and thus, prevent the Owners from claiming
the Property under color of title; and (c) the limitations period to bring
this suit was tolled due to Lior Avni=s mental disability.  Appellants= remaining arguments and issues are
waived for inadequate briefing and citation to authorities.  Tex. R. App. P.  38.1(h).  Moreover, we
do not consider appellants= arguments concerning counterclaims that were severed from
the issues before us on appeal. 

III. 
Standard of Review








When both parties
move for summary judgment and the trial court grants one motion and denies the
other, we review the summary judgment evidence presented by both sides,
determine all questions presented, and render the judgment the trial court
should have rendered.  Texas Workers= Compensation Comm=n v. Patient
Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004) (citing FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000)).  We must
affirm summary judgment if any of the summary judgment grounds are
meritorious.  Id.  A
traditional summary judgment may be granted if the motion and summary judgment
evidence show there is no genuine issue of material fact and the moving party
is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c).  When the trial court does not specify the basis for
its summary judgment, the appealing party must show each independent ground
alleged is insufficient to support the summary judgment granted.  See Star‑Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).

IV. 
Analysis

A.        Competency of the Owners= Summary Judgment Evidence  

Appellants complain that several of
the exhibits offered by the Owners cannot be considered as summary judgment
evidence.  For the reasons discussed below, these complaints are without merit.

1.         Curtis Affidavits

According to appellants, the affidavits
of Greg K. Curtis and Judy Curtis (exhibits T and U to the amended motion for
summary judgment) set forth legal conclusions rather than facts.  Both
witnesses attested that 








After purchasing the property in June 2000, G. J. Curtis
Properties, L.L.C. immediately began to actually possess and utilize the
property in an open, obvious, visible manner, that was inconsistent with and
hostile to the claim of any other person.  Specifically, the property was in
June 2000 utilized as an apartment complex, and G. J. Curtis Properties, L.L.C.
as the owner of the property, leased apartment units to renters, maintained and
repaired the apartment project, and collected rents and paid expenses relating
to the operation of the apartment project during the entire time that G. J.
Curtis Properties, L.L.C. owned the
property. . . . continuously and without interruption by
any adverse claim or suit on behalf of any party. . . . G.
J. Curtis Properties, L.L.C. possessed the property described in Exhibit A and
held it from the time of its purchase in June 2000 until its sale in May 2004
in peaceable and adverse possession. . . . G.J. Curtis
Properties, L.L.C. paid, before they became delinquent, all applicable taxes
owing on the property for each of the years that it owned the property
beginning in June 2000. 

 

We conclude that these affidavits
constitute competent summary judgment evidence.

2.         AVoid@ Exhibits

Appellants next contend that two of
the Owners= summary judgment exhibits are Avoid.@  Specifically, appellants assert
that the December 1, 1988 Deed of Trust and the April  7, 1992  Substitute
Trustee=s Deed (described as transactions A
and D in our Factual and Procedural Background, supra) are void due to a
document filed by Dov Avni Kaminetzky a/k/a Dov Kaminetzky Avni on July 2,
1999, in the Harris County real property records.  The document is entitled: ANotice of Dispute Regarding Mortgage
Debts and Authority to Incur Same and Encumber NY Trust/Ventures= Properties, and Demands for
Accounting, Rescission or Revocation of Transactions and Refunds of Investment
Funds, or, in the Alternative, for Credits, Adjustment+Modification of Debts.@  Appellants rely on the following
language in this ANotice@: 








On November 30, 1987[,] Gregory Z.
Madley, a Texas attorney, prepared the articles of incorporation of Investment
Choices Corporation in Texas.  The articles of incorporation, which were filed
on 1/22/1988 in the Office of the Secretary of State of Texas, specifically set
forth in Article 5 the stipualation [sic] that Athe corporation will not commence
business until it has received for the issuance of (the) consideration of the
value of not less than $1,000.00.@ . . . [T]he
initial stock issuance of Investment Choices Corporation OCCURED [sic] ONLY ON
DECEMBER 30, 1988 . . . . [A]ny action taken by Mr. David
A. Newman, prior to December 30, 1988 on behalf of Investment Choices
Corporation [AICC@] was Avoid ab initio@ unless expressly and uanimously [sic] ratified by its [sic]
board of directors, chaired by myself.  No such action has ocurred [sic] until
this day[8] . . . . [T]he
undersigned . . . HEREBY GIVES FORMAL NOTICE OF MATERIAL
DISPUTES AS TO THE VALIDITY OF THE MORTGAGE DEBT NOW ENCUMBERING THE THREE
TEXAS REAL PROPERTIES THAT WERE MORE PARTICULARLY DESCRIBED ABOVE, BASED UPON
THE ABOVE RECITED FACTS ANDUPON THE INDISPUTABLE LACK OF AUTHORITY OF D.A.
NEWMAN TO ACT BY[,] THROUGH, FOR[,] OR UNDER INVESTMENT CHOICES, AS TRUSTEE,
PRIOR TO 12/30/1988, WITHOUT SPECIFIC APPROVAL OF ALL ICC=S SHAREHOLDERS.

The Owners objected that the document
was not competent summary judgment evidence because it was hearsay, was not
made on the author=s personal knowledge, and was unsworn.  In addition, none of
the documents to which the ANotice@ refers was attached.  

We agree with the trial court=s ruling sustaining the Owners= objections.  We further note that
appellant=s argument was presented by a related company concerning another
apartment complex and a strikingly similar ANotice@ filed by Kaminetzky challenging
David Newman=s authority to execute documents securing liens on property owned by
Investment Choices.  See Choice Personnel No. Four, Inc. v. Richardson,
14-05-00675-CV, 2006 WL 2074681 (Tex. App.CHouston [14th Dist.] July 27, 2006,
pet. denied) (mem.op.).  There we stated, ARegardless of whether Newman was
initially authorized to purchase the Property subject to the Deed of Trust,
[the Choice company] ratified the transaction
by . . . subsequent conveyances.@  Id. 2006 WL 20746814, at *4
(citing Zieben v. Platt, 786 S.W.2d 797, 802 (Tex. App.CHouston [14th Dist.] 1990, no
writ)).  The First Court of Appeals, considering an appeal regarding the same
property, reached the same conclusion.  See Choice Personnel No. Four, Inc.
v. 1715 Johanna Square Ltd., No. 01-05-00830-CV, 2007 WL 1153046, *5 (Tex.
App.CHouston [1st Dist.] April 13, 2007,
pet. filed) (mem. op.).  Here too, Investment Choices ratified Newman=s execution of the deed of trust by
conveying the property subject to that deed of trust.

3.         Date Discrepancy








Appellants also contend that Hopkins,
in his capacity as trustee, failed to convey any property interest to himself
in his individual capacity.  This conveyance was made by  warranty deed with a
vendor=s lien, and appellants assert that
the conveyance is void because the warranty deed is dated April 7, 1991, but
the vendor=s lien is dated April 7, 1992.  Both documents were notarized on April 7,
1992.  Because appellants cite no authority in support of their argument that
this voids the conveyance, this argument is waived.  

B.        Validity
of Adverse Possession Evidence

In their amended motion for summary
judgment, the Owners contend they adversely possessed the Property under title
or color of title, and thus, appellants= claims are barred by the three-year
statute of limitations.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 16.024 (Vernon 2002) (party must
file suit to recover real property held by another in peaceable and adverse
possession under title or color of title not later than three years after the
day the cause of action accrues).  Here, the transactions described in our
summary of the facts are supported by the Owners= summary judgment evidence.  This
transactional history establishes that the Owners possessed the Property under
color of title.

Appellants argue that the Owners do
not hold the Property under color of title because three of the conveyances are
quitclaim deeds or otherwise fail to warrant title.  See Rogers v.
Ricane Enters., Inc., 884 S.W.2d 763, 769 (Tex. 1994) (holding that a quitclaim
deed is not a conveyance or a muniment of title and does not establish any
title in those holding the deed, but merely passes the interest of the grantor
in the property). 
First, appellants contend that the special warranty deed conveying the Property
from Hylton to Nguyen on October 31, 1996 is actually a quitclaim deed because
the deed states that grantor only warrants the title to the property against
those claiming by, through or under Grantor.  They similarly argue that the
Correction Special Warranty Deed with Vendor=s Lien from McDonald to G-J Curtis
Properties, L.L.C. is a quitclaim deed because it says that the grantee does
not receive any warranties of title.  Finally, appellants argue that the deed
conveying the Property from G. J. Curtis Properties, L.L.C. to the Owners fails
to warrant title.








In deciding whether an instrument is
a quitclaim deed, courts look to whether the language of the instrument, taken
as a whole, conveyed the property or merely the grantor=s rights.  Geodyne Energy Income
Prod. P=ship I-E v. Newton Corp., 161 S.W.3d 482, 486B87 (Tex. 2005) (assignment and bill
of sale that never stated the nature or percentage interest that was being
conveyed and expressly disclaimed warranty of title was a quitclaim deed). 

The Hylton deed provides in pertinent
part:

[T]he Property is conveyed by Grantor
and accepted by Grantee subject to all matters affecting title to the Property
of record in the Real Property Records of Harris County, Texas; TO HAVE AND TO
HOLD the above described premises . . . unto the said
Grantee, Grantee=s heirs, executors[,] and administrators forever; and Grantor
does hereby bind Grantor, Grantor=s heirs, executors, and
administrators to WARRANT AND FOREVER DEFEND all and singular the said premises
unto the said Grantee, Grantee=s heirs, executors[,] and administrators, against every
person whomsoever lawfully claiming or to claim the same or any part thereof,
by, through, or under Grantor, but not otherwise, subject  to the exceptions
referred to above . . . . Grantor and Grantee
expressly agree that the Property is granted, sold[,] and conveyed by Grantor
and accepted by Grantee on an Aas is@ basis only.  Grantee has examined and has determined that
all aspects of the condition of the Property are satisfactory to Grantee. 
Grantor expressly disclaims any and all warranties and representations, express
or implied, as to the state of the Property, its area, condition, quality,
quantity, character, size, description[,] or suitability or fitness for any use
or purpose, whether existing or contemplated, except for warranties of title as
specifically set forth in this Warranty Deed.

Appellants base their objections to
the McDonald Correction Deed on the following language:

Reservations from and Exceptions to
Conveyance and Warranty:








Easements, rights-of-way, and
prescriptive rights, whether of record or not; all presently recorded
restrictions, reservations, covenants, conditions, oil and gas leases, mineral
severances, and other instruments, other than liens and conveyances, that
affect the Property . . . . Grantor, for the Consideration
and subject to the Reservations from and Exceptions to Conveyance and Warranty,
grants, sells, and conveys to Grantee the Property . . . to
have and to hold it to Grantee, Grantee=s heirs, executors, administrators,
successors and assigns to warrant and forever defend all and singular the
Property to Grantee and Grantee=s heirs, executors, administrators, successors, and assigns
against every person whomsoever lawfully claiming or to claim the same or any
part thereof, except as to the Reservations from and Exceptions to Conveyance
and Warranty, when the claim is by, through, or under Grantor, but not
otherwise. . . . GRANTEE ACKNOWLEDGES AND AGREES BY
ACCEPTING THIS DEED THAT EXCEPT FOR THE SPECIAL WARRANTY OF TITLE PROVIDED
HEREIN AND TO THE MAXIMUM EXTENT PERMITTED BY LAW, GRANTEE IS PURCHASING THE
PROPERTY AAS IS,@ AWHERE IS[,]@ AND WITH AALL FAULTS@ AND SPECIFICALLY AND EXPRESSLY
WITHOUT ANY WARRANTIES, REPRESENTATIONS[,] OR GUARANTIES, OF ANY KIND, ORAL OR
WRITTEN, EXPRESS, IMPLIED[,] OR STATUTORY, CONCERNING THE PROPERTY FROM OR ON
BEHALF OF THE GRANTOR.

Appellants complain of the following
language in the deed from G. J Properties, L.L.C. to Noesi and Alcantar:

Permitted Exceptions shall mean all and singular, but
only to the extent that the same are currently valid and enforceable against
the Property the following (i) easements and rights of way, whether of record
or not; (ii) all presently recorded restrictions, reservations, covenants,
conditions, oil and gas leases, mineral severances and other instruments that
affect the Property; (iii) rights of adjoining owners of fences situated on a
common boundary line; and (iv) taxes for the current year . . . . [T]he Grantor
. . . has GRANTED, BARGAINED, SOLD and CONVEYED and by these presents does
GRANT, BARGAIN, SELL and CONVEY unto Grantee the Property.

This conveyance is made by Grantor and accepted by
Grantee SUBJECT TO the Permitted Exceptions.

TO HAVE AND TO HOLD the Property,
subject to the matters herein set forth, together with all and singular the
rights and appurtenances thereto in anywise belonging unto Grantee, its
successors and assigns forever; and Grantor does hereby bind itself, its
successors and assigns to WARRANT AND FOREVER DEFEND all and singular the
Property unto Grantee, its successors and assigns, against every person
whomsoever lawfully claiming or to claim the same or any part thereof.








Taken as a whole, we conclude these
deeds do not merely convey the grantor=s rights, but convey the Property.  See
Whitehead v. State, 724 S.W.2d 111, 113 (Tex. App.CBeaumont 1987, pet. ref=d) (holding that a deed reciting, in
substance, that grantor granted, sold, and conveyed to grantee all of grantor=s rights, title, and interest to
three separate tracts of land in question, which described those tracts in
detail, and which did not use the word Aquitclaim@ or words Aremise, release, and forever
quitclaim,@ was not a quitclaim deed).  Accordingly, we conclude the Owners assert
their claims to the Property Aunder title or color of title.@ 

C.        Tolling of Limitations

The Owners= amended motion for summary judgment
and accompanying exhibits and affidavits present prima facie proof that they
adversely possessed the property and that appellants= claims are barred by the three-year
statute of limitations.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 16.023 (ATo satisfy a limitations period,
peaceable and adverse possession does not need to continue in the same person,
but there must be privity of estate between each holder and his successor.@); id. ' 16.024 (AA person must bring suit to recover
real property held by another in peaceable and adverse possession under title
or color of title not later than three years after the day the cause of action
accrues.@).[9] 
Appellants argue that the limitations were tolled because Lior Avni was
mentally incompetent before filing this suit.  It was therefore appellants= burden to raise a genuine issue of
material fact on that issue.  See Smith v. Erhard, 715 S.W.2d 707, 709
(Tex. App.CAustin 1986, writ ref=d n.r.e.) (person relying on a legal disability to toll
limitations must show that the person was under a legal disability when the
cause of action accrued and disability ceased before suit).  








Appellants= pleadings, Choice=s motion for traditional summary
judgment, and appellants= responses to the Owners= motion for summary judgment all fail
to identify the dates Avni=s alleged disability began and ended.  The only evidence
appellants cite in support of their argument is an exhibit to the Owners= motion for summary judgment
containing Choice=s answers to interrogatories.  But a party cannot rely on its
own answers to interrogatories, even if offered by an adversary.  Garcia v.
Nat=l Eligibility Express, 4 S.W.3d 887, 890 (Tex. App.CHouston [1st Dist.] 1999, no pet.). 
Thus, this material does not constitute competent summary judgment evidence
raising a genuine issue of material fact.  See Tex. R. Civ. P. 197.3 (AAnswers to interrogatories may be
used only against the responding party.@); Yates v. Fisher, 988 S.W.2d
730, 731 (Tex. 1998) (finding that appellate court erred in using plaintiff=s interrogatory in plaintiff=s favor to defeat summary judgment). 

IV.  Conclusion

We conclude the Owners established
their right to summary judgment as a matter of law.  We therefore affirm the
judgment of the trial court.

 

 

________________________________

Eva M. Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed August 7, 2007.

Panel consists of Justices Hedges,
Hudson, and Guzman. 

 

 









[1]  Investment Choice agreed to accept the Property A>as is= without
warranty as to habitability or otherwise.@ 





[2]  Recorded as L960297.





[3]  It was also secured by a deed of trust to John H.
Trueheart, Jr., Trustee; however, the deed of trust signed by David Newman on
December 1, 1988 is a superior lien. 





[4]  Appellants assert there is no evidence that Hopkins
appointed Wells as a substitute trustee, but the recitals in a substitute
trustee=s deed constitute prima facie evidence of the validity
of the foreclosure sale.  See Deposit Ins. Bridge Bank, N.A., Dallas v.
McQueen, 804 S.W.2d 264, 266 (Tex. App.CHouston
[1st Dist.] 1991, no writ)  (holding that recitals in a deed are presumed to be
correct, unless rebutted by competent evidence). 





[5]  Here, the note was made by Queststar Bank, National
Association, and the deed of trust was made to Don W. Wigley, Trustee.





[6]  Appellant=s
exhibit was a certified copy of an unsworn document filed by Dov Avni
Kaminetzky a/k/a Dov Kaminetzky Avni on July 2, 1999, in the Harris County real
property records.  The document is entitled: ANotice of Dispute Regarding Mortgage Debts and Authority to Incur Same
and Encumber NY Trust/Ventures= Properties,
and Demands for Accounting, Rescission or Revocation of Transactions and
Refunds of Investment Funds, or, in the Alternative, for Credits,
Adjustment+Modification of Debts.@ 
Appellants objected that the document was hearsay, was not made on the author=s personal knowledge, and was unsworn.  In addition,
none of the documents to which the ANotice@ refers were attached.  





[7]  The issues as stated by appellants are as follows:

1.         Is a party who files a motion for summary
judgment without evidence to support the motion entitled to summary judgment?

2.         Is the three-year statute of limitations
for adverse possession applicable when the parties claiming adverse possession
do not have evidence of title or color of title to the property which they are
claiming under adverse possession?

3.         Can individuals who claim to own real
property under the five-year statute of limitations for adverse possession
receive a greater interest in the property than the monuments of title under
which their possession was held?

4.         Does the mental incompetence of a
shareholder of a corporation that owns real property whose charter has been
forfeited toll the statutes of limitations?

5.         Can successors of someone who purchased
real property at a non-judicial foreclosure sale receive a greater interest in
the property than their grantors had?

6.         Is a purchaser of real property charged with
knowledge of documents that appear in that person=s chain of title?

7.         Can individuals counter-sue entities they
have never had any contact with prior to the filing of a lawsuit for
intentional infliction of emotional distress?

8.         Is a judgment final if it disposes of the
entire controversy between the parties based on the facts which have been
pleaded by the parties?

9.         If a grantor conveyed the same property more than once, does
the person or entity who purchased the property first prevail over a subsequent
purchaser?





[8]  This sentence continues, Awith respect to either >Johanna Square Apartments@,
the ABeverly Apartments@ or
the ASpring Creek Apartments@, which are the Texas real properties made the subject of this sworn
notice . . . .@ 
The ASpring Creek Apartments@ identified by Kaminetzky are now known as the Red Apple Apartments.@





[9]  The same chain of evidence also establishes that the
Owners have superior title from a common source.   See Martin v. Amerman,
133 S.W.3d 262, 265 (Tex. 2004) (stating that a party may prevail in a
trespass-to-try-title action by establishing superior title from a common source). 
This, then, is an independent reason to affirm the trial court=s judgment.