The **DEPOSIT INSURANCE BRIDGE BANK, N.A., DALLAS,** Texas (Assignee for Federal Deposit Insurance Corporation), Appellant,

v.

Mike McQUEEN & Terry H. McQueen, Appellees.

No. 01–89–01095–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 31, 1991.

George R. Diaz–Arrastia, Terry Adams, Jr., Houston, for appellant.

Frank G. Harmon, III, Jeffery Horowitz, Houston, for appellees.

Before EVANS, C.J., and MIRABAL and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from a take-nothing judgment following a bench trial. The underlying suit is a promissory noteholder's action to recover from the note's maker the deficiency remaining after default and foreclosure under a deed of trust.

On November 1, 1982, appellees, Mike McQueen and Terry H. McQueen ("the McQueens"), executed and delivered to appellant's predecessor, MBank San Felipe ("the Bank"),[1] a promissory note in the original principal sum of $550,000, payable November 1, 1983. Simultaneously, the McQueens executed and delivered a deed of trust conveying certain real property to a trustee for the benefit of the noteholder.

The note was extended three times over the next three years, and interest only was paid on it. After the third extension, the McQueens paid neither interest nor principal, and defaulted when the note matured on November 1, 1985.

The deed of trust gave the noteholder the right to appoint a substitute trustee and, in the event of default, to request the trustee, or his substitute, to sell the property at a public auction for cash and pay from the proceeds all expenses of the sale, reasonable attorney's fees, and charges due and unpaid under the note.

As a result of the default, the Bank appointed a substitute trustee, whom it instructed to post the real property securing the note for foreclosure sale. The substitute trustee sold the property at a public auction at the Harris County courthouse door on March 4, 1986, received a sale price of $391,000 from the highest bidder, the Bank, and paid $893.25 in fees and ex-

1. MBank San Felipe, the original payee, was merged into MBank Houston, N.A. On March 28, 1989, the Federal Deposit Insurance Corporation ("FDIC") took receivership of MBank Houston, N.A., and assigned the note and its extension to appellant, Deposit Insurance Bridge Bank, N.A., Dallas, Texas ("DIBB"). In this opinion, "appellant" or "the Bank" refers to either DIBB or its predecessors, depending on the time period being discussed.

penses of the sale to the Bank's attorneys. The Bank credited $390,106.75 to the McQueens' balance of accrued interest and unpaid principal.

The Bank then filed this suit against the McQueens to recover the deficiency balance of $297,240.42, including interest to date of trial, plus attorney's fees in the amount of $15,000. The McQueens answered with, and went to trial on, a general denial. At trial, the Bank introduced: (1) the original note; (2) the three extensions of the note and lien; (3) evidence that the McQueens did not pay the amounts owed under the final extension of the note when it matured; (4) the deed of trust; (5) a certified copy of the substitute trustee's deed; and (6) evidence of the amount that was credited to the McQueens' debt and the amount of the deficiency.

The trial court filed findings of fact and conclusions of law indicating that the Bank failed to "make a sufficient evidentiary showing on each of the elements of its case" by failing to prove that either debtor, Mike McQueen or Terry H. McQueen, was given notice of acceleration of the note and notice of the foreclosure sale according to law and the deed of trust.

In three points of error, the Bank asserts that the trial court erred: (1) in imposing upon the Bank the burden to establish the sufficiency of notice of acceleration and notice of foreclosure; (2) in entering a take-nothing judgment when the Bank established the validity of the foreclosure sale by prima facie evidence, which the McQueens wholly failed to rebut; and (3) in ruling that, under the rules of professional responsibility, the Bank's counsel could not testify regarding the timely sending of notice of foreclosure.

■ The second of appellant's three points of error is dispositive of the appeal, and we therefore consider it first. In its second point of error, the Bank asserts that the trial court erred in entering a take-nothing judgment because the Bank established the validity of the foreclosure sale by prima facie evidence which the McQueens wholly failed to rebut. Pertinent to this point of error are the trial

court's conclusions of law 3 and 4, which state that "[the Bank] failed to prove ... that timely personal notice of foreclosure sale was ever given to [both of the McQueens]." The Bank urges that proper notice was given as a matter of law.

■ A foreclosure is to be reviewed with a presumption that all prerequisites to the sale have been performed and that provisions for waiver of notice are valid. *Chapa v. Herbster*, 653 S.W.2d 594, 600 (Tex. App.—Tyler 1983, no writ); *Phillips v. Whiteside*, 426 S.W.2d 350, 352 (Tex.Civ. App.—Houston [14th Dist.] 1968, no writ).

The substitute trustee's deed, which was admitted in evidence, recites compliance with all conditions of the deed of trust. Those deed recitals constitute prima facie evidence of the validity of the foreclosure sale, including the prerequisite of timely service of notice of sale on the debtor(s). *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex.1983); *Kirkman v. Amarillo Sav. Ass'n*, 483 S.W.2d 302, 306 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.) (such recitals are presumed to be correct, unless rebutted by competent evidence).

Section 13(a) of the deed of trust executed by the McQueens required that notice of the foreclosure sale be served on each debtor obligated to pay the note indebtedness, and section 13(f) of the deed of trust stated that:

The recitals and statements of fact contained in any notice or in any conveyance to the purchaser or purchasers at any such sale shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed.

This provision in the deed of trust establishes the recitations in the substitute trustee's deed as prima facie evidence that the foreclosure sale by the substitute trustee met all requirements of law, including timely service of notice of sale on each debtor. *Sullivan v. National Western Life Ins. Co.*, 417 S.W.2d 896, 898 (Tex.Civ. App.—Houston 1967, no writ).

The presumption of the validity of a foreclosure sale is not conclusive and may be rebutted. *Musick*, 650 S.W.2d at 767. However, the McQueens presented no evidence at trial to refute the recitals of timely notice of sale in the substitute trustee's deed. To the contrary, the only testimony elicited by the McQueens in this regard was cross-examination of Lori Hagar, the Bank's vice-president, which bolstered the Bank's prima facie case. Hagar's cross-examination testimony showed that: (1) the Bank sent *at least* one notice of the foreclosure sale by certified mail; (2) the notice was sent to *Ms.* Terry H. McQueen; (3) the notice was addressed and mailed to the address where the McQueens resided together; (4) the notice was addressed and mailed to the McQueens' most recent address as reflected by the Bank's files; and (5) the notice to Ms. Terry H. McQueen was actually received by *Mr.* Mike McQueen, who signed the postal service return receipt ("the green card").

Hagar's testimony did not show that notice of the foreclosure was not timely *sent* to each of the McQueens; it did show, however, that one copy was clearly *received*. In *Martinez v. Beasley*, 616 S.W.2d 689, 690 (Tex.App.—Corpus Christi 1981, no writ), the court held that one certified letter, addressed and mailed to the debtors at the address where they actually resided as husband and wife, constituted a sufficient notice of sale, and a separate notice was not required to be sent to each spouse at the same address. Further, in *Forestier v. San Antonio Savings Association*, 564 S.W.2d 160, 163 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.), the court held that although the husband and wife both executed the note in question, which was secured by a deed of trust, the foreclosure sale was not rendered voidable merely because two separate notices of sale were not mailed to the spouses at the same address.[2]

The McQueens did not rebut the prima facie evidence contained in the recitals of the substitute trustee's deed that the foreclosure sale met all requirements of law and of the deed of trust. The trial court therefore erred in rendering a take-nothing judgment in the face of the Bank's unrebutted prima facie case.

The Bank's second point of error is sustained.

Point of error three in its entirety, and part of point of error one, further complain of error concerning proof of notice to the McQueens of the foreclosure sale. Having determined in point of error two that the Bank established an unrebutted prima facie case, including notice of foreclosure sale, we need not consider point of error three at all, or that part of point of error one that complains of notice of the foreclosure sale.

The Bank's first point of error additionally asserts that the trial court erred in imposing on the Bank the burden to establish the sufficiency of the notice of acceleration of the note.

The trial court found that the Bank did not timely send the McQueens notice of acceleration of the note, and concluded that the sale was therefore invalid. The trial court erred in this determination. The McQueens never asserted at trial that notice of acceleration was not given. Even if they had complained that notice of acceleration was not given, such notice was not required for two reasons. First, the note was not accelerated, but matured by the terms of the last extension on November 1, 1985. Second, the terms of the note and of the deed of trust both clearly provide that the McQueens waived any notice of acceleration.

The Bank's first point of error is sustained.

The judgment of the trial court is reversed and rendered in favor of the Bank for the full amount of the deficiency. The cause is remanded to the trial court for computation of interest and determination of the Bank's attorney's fees.

---

2. The Bank's exhibits 10 and 11 on its bill of exceptions show that notice letters were in fact sent to each of the debtors here.