**Opinion issued March 27, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00612-CV

_____

### GERMAN MARLON SARAVIA, Appellant

### V.

### SHERMAN BENSON AND RICKY J. GANDY, Appellees

---

On Appeal from the 125th District Court
Harris County, Texas
Trial Court Case No. 2006-28596

---

## O P I N I O N

In this commercial property dispute, Ricky Gandy sued Sherman Benson, seeking to set aside foreclosure of a lien on the property and to nullify its subsequent sale to Benson, the lienholder. German Saravia, a businessman who later purchased the property from Benson, intervened in the suit.

After a bench trial, the trial court set aside the foreclosure and divested Saravia of title to the property. It awarded title to Gandy, but required Gandy to pay Benson the outstanding amount due to satisfy the lien. It ordered that Saravia take nothing. On appeal, Saravia complains that the trial court erred in setting aside the foreclosure and in divesting him of title to the property. Saravia alternatively complains that the trial court erred by refusing to consider damages against Benson for failing to convey good title to him, or against Gandy under the doctrine of equitable subrogation. Because the trial court erred in setting aside the foreclosure and in divesting Saravia of title, we reverse and remand.

## Background

In August 2002, Benson sold commercial real property to Halco Waste Container, Inc. In connection with the transaction, Halco promised to pay Benson $43,000 plus nine percent annual interest; the note was secured by a deed of trust and lien on the property. The deed of trust includes a due–on–sale clause. The clause provides that any remaining debt will accelerate should Halco sell the property without Benson's written consent. The deed of trust also includes an assumption–with–consent clause: "The Property may be sold to a subsequent buyer who assumes the Note with no change in interest rate or terms; provided the subsequent buyer obtains prior written consent from [Benson]. Consent will be based on the subsequent buyer's credit history, and shall not be unreasonably

withheld." The deed of trust requires that Halco pay all taxes related to the property.

In November 2004, Halco, under another name, leased part of the property to Saravia. Halco then defaulted on the loan. In December 2004, Benson's counsel, Andrew Lannie, filed a notice of foreclosure on the property.

On January 5, 2005, Halco sold the property to Gandy, Halco's owner and president. Gandy personally assumed Halco's debt to Benson. Gandy also agreed to assume liability for all taxes associated with the property. Six days later, on January 11, Gandy filed for bankruptcy.

On February 1, while Gandy's bankruptcy case was pending, Lannie, as substitute trustee, purported to foreclose on the property and sell it to Benson.

Saravia paid Gandy rent through July 2005. Sometime in August or September 2005, Gandy stopped visiting the property to collect rent, and Saravia stopped paying rent to Gandy.

On October 19, 2005, the bankruptcy court dismissed Gandy's case. That day, Benson and Lannie instructed Saravia to cease paying rent to Halco or Gandy. Benson offered Saravia the option to purchase the property.

On March 6, 2006, Lannie filed a second notice of foreclosure on the property, to take place on April 4, 2006, between 10:00 a.m. and 4:00 p.m. "at the door of the County Courthouse in Harris County, Texas." Lannie mailed the notice

3

by certified mail to the address of the property, Halco's last known address. At 10:00 a.m. on April 4, 2006 "at the door of the County Courthouse of Harris County, Texas[,]" Lannie again foreclosed on the property and again sold it to Benson.

On April 25, Benson and Saravia executed an earnest money contract, in which Saravia agreed to purchase the property for $60,000 plus all delinquent property taxes. Benson agreed to furnish an owner's title policy at closing.

On May 9, Gandy initiated this suit for wrongful foreclosure against Benson and filed a notice of lis pendens. On May 11, Benson and Saravia closed the sale through a title company. At the closing, Benson conveyed the property to Saravia by a general warranty deed. In an affidavit, Benson averred that the property was not subject to any debts or liens, and Saravia had no knowledge of Gandy's lawsuit filed two days earlier. At the closing, Saravia paid Benson $30,000 in cash plus remitted $13,421.72 in delinquent property taxes. Saravia and Benson also executed a deed of trust, in which Saravia promised to pay Benson an additional $30,000. Saravia later paid the debt, and Benson released the lien.

*Course of proceedings*

In 2007, after attempting to obtain a loan and contacting the title company, Saravia discovered Gandy's suit against Benson. Saravia intervened in the lawsuit. After a bench trial, the trial court ordered that Gandy recover title to the property,

4

but further ordered that Benson recover $43,036.38 from Gandy, and that Saravia take nothing. The trial court found that Benson's first foreclosure was wrongful because it violated the automatic stay of Gandy's bankruptcy proceeding. The trial court also found that Benson's second foreclosure was wrongful because: (1) the foreclosure notice did not provide the correct location of the foreclosure sale; (2) Lannie did not properly notify Gandy of the foreclosure sale; (3) the sale did not occur within three hours after the earliest time stated in the notice; and (4) the foreclosure notice did not specify a three–hour period during which the foreclosure would occur. The trial court additionally found that Gandy had tendered payment to Benson in satisfaction of his debt to Benson. Finally, the trial court concluded that Saravia was not a bona fide purchaser.

## Discussion

Saravia challenges the trial court's legal interpretation of title and the sufficiency of the evidence to support the factual determinations it relied on in setting aside foreclosure of the lien on the property.

## I.    Standard of Review

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair–minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact–finder could, and disregard

5

contrary evidence unless a reasonable fact–finder could not. *Id.* If the evidence falls within the zone of reasonable disagreement, then we may not substitute our judgment for that of the fact–finder. *Id.* at 822. In making credibility determinations, however, the fact–finder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Id.* at 820. The fact–finder thus is not "free to believe testimony that is conclusively negated by undisputed facts." *Id.*

In reviewing the record for factual sufficiency, we set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Id.* (quoting *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). The trial court is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *See City of Keller*, 168 S.W.3d at 819.

We review a trial court's construction of an unambiguous contract de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.

1999). If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010); *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). A contract is ambiguous only if it is subject to two or more reasonable interpretations. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

## II. Title

The trial court set aside both foreclosures, finding that Gandy had tendered payment of the amount due on the lien that the property secured and that the foreclosure sales did not comport with procedural requirements. We review a foreclosure with a presumption that all prerequisites to the sale have been performed. *Deposit Ins. Bridge Bank, N.A., Dallas v. McQueen*, 804 S.W.2d 264, 266 (Tex. App.—Houston [1st Dist.] 1991, no writ). This presumption, however, is not conclusive and may be rebutted. *Id.* at 267. We thus examine the record for any evidence supporting the trial court's findings that the prerequisites were not met.

### *Tender*

Tender of the sum owed on a mortgage debt is a condition precedent to the mortgagor's recovery of title from a mortgagee who is in possession and claims

title under a void foreclosure sale. *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citing *Willoughby v. Jones*, 251 S.W.2d 508, 510 (Tex. 1952)). A tender is an unconditional offer by a debtor to pay another a sum not less in amount than that due on a specified debt or obligation. *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963). A valid and legal tender of money consists of the actual production of the funds. *Id.* A debtor must relinquish possession of the funds for a sufficient time and under such circumstances as to enable a creditor, without special effort on his part, to acquire possession. *Id.* The party asserting valid tender bears the burden of proving it. *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 320 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Gandy proffered no evidence that he made a valid tender before Benson foreclosed on the lien. Gandy instead contended that Benson refused to provide a payoff amount prior to this suit. A refusal to provide a payoff amount is not evidence of Benson's unwillingness to accept actual tender of the amount owed on the note. Because Gandy did not show that he had tendered payment to Benson, the trial court erred in finding that Gandy had defeated the presumption of regularity of the foreclosure and sale. *See Fillion*, 709 S.W.2d at 246.

*Procedural infirmity*

Gandy also contended, and the trial court found, that the foreclosures were wrongful because Benson did not comport with required notices of foreclosure, and because any foreclosure proceeding was automatically stayed pending his bankruptcy. Saravia first responds that the property was never part of Gandy's bankruptcy estate, in light of the deed of trust's due–on–sale clause, and thus the bankruptcy was no impediment to foreclosure. Due–on–sale clauses are valid and enforceable in Texas. *Sonny Arnold, Inc. v. Sentry Sav. Ass'n*, 633 S.W.2d 811, 816 (Tex. 1982). A due–on–sale clause, however, does not impede the transfer of title; rather, it provides that a sale of the property accelerates the debt, so that any outstanding amount is due and owing at the time of the sale. *Id.* at 814. The deed of trust's due–on–sale clause accelerated Halco's debt to Benson, but did not prevent Halco from transferring the property to Gandy. Because the due–on–sale clause did not invalidate the sale to Gandy, we examine whether the trial court correctly set aside the foreclosure of the lien on the property in light of Gandy's pending bankruptcy (in the case of the first foreclosure and sale) and procedural irregularities (in the case of the second).

Under the federal bankruptcy code, an automatic stay bars a creditor from foreclosing on a debtor's property while the debtor's bankruptcy proceeding is pending. 11 U.S.C. § 362 (2012). A creditor, however, may ask the bankruptcy

9

court to lift the automatic stay by demonstrating that cause exists. *Id.* § 362(d); *In re Mullin*, 433 B.R. 1, at *19 (Bankr. S.D. Tex. July 2, 2010). In *Mullin*, the U.S. Bankruptcy Court for the Southern District of Texas held that a debtor cannot use the automatic stay to vitiate a creditor's rights under a due–on–sale clause. *Id.* The court explained that "[t]he very purpose of a due on sale clause is to prevent the [lender's] collateral from falling into the hands of someone other than the [debtor] whose character and credit history the lender evaluated in making its loan." *Id.* at *3. There, the due–on–sale clause accelerated the note secured by a lien on the property and allowed foreclosure of the property to satisfy the debt. *Id.* at *19.

While a due–on–sale clause provides a basis for foreclosing a lien when the property is transferred to a bankrupt debtor without tender and a basis for lifting a bankruptcy stay, nothing in this record shows that Benson sought to lift the automatic stay to allow the foreclosure to proceed. Because the bankruptcy court had not lifted the automatic stay, some evidence supports the trial court's finding that Benson's first attempted foreclosure was invalid. *See* 11 U.S.C. § 362.

Gandy's objections to the second foreclosure and sale, however, lack merit. Gandy first disputed the place of sale. Section 51.002 of the Property Code provides, "The commissioners court shall designate the area at the courthouse where [foreclosure] sales are to take place and shall record the designation in the

10

real property records of the county. The [foreclosure] sale must occur in the designated area." TEX. PROP. CODE ANN. § 51.002(a) (West 2007). The Harris County Commissioners Court has designated the Family Law Center, 1115 Congress, Houston, Texas 77002 as the area for foreclosure sales. *Frequently Asked Questions*, JUDGE ED EMMETT, http://www.judgeemmett.org/faqs.asp (last visited Mar. 17, 2014).

The trial court admitted Lannie's affidavit describing the foreclosure and sale to Benson as evidence at trial. In his affidavit, Lannie averred that he held the foreclosure sale "at the door of the County Courthouse of Harris County, Texas." The Family Law Center is one of the county's courthouses in Harris County, Texas. No evidence in the record demonstrates that the foreclosure took place at an improper location. Because Gandy did not adduce evidence to rebut the presumption of regularity given to a foreclosure sale, the trial court erred in setting aside the foreclosure based on any irregularity with regard to location.

Second, Gandy disputed that he received proper notice of the second sale. A creditor must give notice of foreclosure by mailing "each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt." TEX. PROP. CODE ANN. § 51.002(b)(3). To establish a violation of the statute, a debtor must show that the mortgage servicer held in its records the most recent address of the debtor and failed to mail a notice by certified mail to that address. *Onwuteaka*

*v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Lannie satisfied the statutory requirement by mailing a notice by certified mail to the address of the property, Halco's last known address.

Relying on *Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 480 (S.D. Tex. 2012), Gandy argues that he was entitled to notice in his individual capacity because he had assumed from Halco the debt that the lien secured. *Brush*, however, is distinguishable. There, the original debtor died after defaulting on a home mortgage; his daughter inherited his home and the mortgage. *Id.* at 478. Here, the assumption of the debt took place in connection with a sale, not a transfer at death. Gandy did not attempt to obtain Benson's written consent before purchasing the property from Halco, as required under the deed of trust's assumption–with–consent clause, which provides: "The Property may be sold to a subsequent buyer who assumes the Note with no change in interest rate or terms; provided the subsequent buyer obtains prior written consent from [Benson]. Consent will be based on the subsequent buyer's credit history, and shall not be unreasonably withheld."

Notwithstanding Gandy's failure to attempt to obtain consent, Gandy contends that Benson unreasonably withheld it, and that Gandy's assumption of the debt did not harm Benson. But Gandy's immediate filing of personal bankruptcy precluded Benson from exercising his right to foreclose on the property, harming

Benson. Gandy was not entitled to notice in his individual capacity because Benson did not consent to his assumption of the debt. Accordingly, the trial court could not have set aside the second foreclosure based upon inadequate notice.

Third, the trial court found that no evidence indicated that the sale occurred within three hours after the earliest time stated in the notice. Section 51.002 of the Property Code provides, "The sale must begin at the time stated in the notice of sale or not later than three hours after that time." TEX. PROP. CODE ANN. § 51.002(c). In the notice, Lannie stated that the sale would occur between 10:00 a.m. and 4:00 p.m., and Lannie averred that the sale occurred at 10:00 a.m. Because the sale occurred within three hours of 10:00 a.m., the earliest time stated in the notice, Lannie satisfied the timing requirement of the Property Code.

Fourth, the trial court also found that the foreclosure notice failed to comply with the Property Code by failing to specify a three–hour period during which the foreclosure would occur. The Property Code, however, does not impose this requirement. *See id.* § 51.002 (West Supp. 2013). Nor did the Property Code impose this requirement in 2006, when Lannie posted the notice. *See* Act of Sept. 1, 2005, 79th Leg., R.S., ch. 555, § 1, sec. 51.002, 2005 Tex. Gen. Laws 1482 (amended 2013) (current version at TEX. PROP. CODE. ANN. § 51.002 (West. Supp. 2013)).

We hold that nothing in the record defeats the presumption of regularity given the second foreclosure sale; thus, the trial court erred in setting it aside.

## III.    Sale to third–party purchaser

Because the foreclosure of the lien and sale of the property to Benson were proper, Benson's subsequent sale to Saravia was also proper. Gandy contends that Saravia lacks standing to challenge the trial court's determination of title, because Saravia purchased the property with constructive notice of Gandy's lis pendens and Saravia is not the holder of Halco's underlying debt. We agree with Gandy that Saravia took title to the property subject to Gandy's lis pendens, but disagree that Saravia lacks standing to assert his claim to good title.

*Notice of lis pendens*

Status as a bona fide purchaser is an affirmative defense to a title dispute. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). A bona fide purchaser acquires real property in good faith, for value, and without notice of any third–party claim or interest. *Id.* Notice may be constructive or actual. *Id.* Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Id.* (citing *Flack v. First Nat'l Bank of Dalhart*, 226 S.W.2d 628, 632 (Tex. 1950)).

A properly filed lis pendens operates as constructive notice "to the world of its contents." *In re Cohen*, 340 S.W.3d 889, 892 (Tex. App.—Houston [1st Dist.]

14

2011, orig. proceeding) (quoting TEX. PROP. CODE ANN. § 13.004(a) (West 2004));

*see also B & T Distribs., Inc. v. White*, 325 S.W.3d 786, 789 (Tex. App.—El Paso 2010, no pet.) ("The purpose of a notice of *lis pendens* is . . . to put prospective buyers on notice that they acquire any interest subject to the outcome of the pending litigation."). A purchaser of land is charged with information contained in instruments of record that are in the chain of title at the time he purchases the property. *Cadle Co. v. Caamano*, 930 S.W.2d 917, 920 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

Gandy filed a lis pendens on May 9, 2006, two days before Benson and Saravia closed the sale of the property. Saravia purchased the property at closing. Saravia thus is properly charged with constructive notice of the previously filed lis pendens. *See id.* Because Saravia had constructive notice, Saravia is not a bona fide purchaser. *See Madison*, 39 S.W.3d at 606. Saravia thus cannot invoke the bona–fide–purchaser defense in this title dispute.

*Standing*

Saravia, however, has standing to establish proper title, even though he was not the holder of the note. To establish standing, a plaintiff must show that he is personally aggrieved and that his alleged injury is concrete and particularized, actual or imminent, not hypothetical. *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008). When a third party has a property interest,

15

whether legal or equitable, that will be affected by a foreclosure sale, the third party has standing to challenge the sale to the extent that its rights will be affected by the sale. *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988) (citing *Am. Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 586 (Tex. 1975)). Concomitantly, a property owner whose title is challenged based on a faulty foreclosure has standing to defend his title.

## IV. Warranty of title

Saravia further contends that Benson is liable for breach of the general warranty deed and Gandy is liable under the doctrine of equitable subrogation. Our determination that Saravia has title to the property renders moot Saravia's request for equitable subrogation from Gandy.

Benson has not filed an appellate brief, and thus does not counter Saravia's contention that Benson breached his obligation to provide good title. A warranty of title is a contract on the part of the grantor to pay damages in the event of failure of title. *Bass v. Harper*, 441 S.W.2d 825, 827 (Tex. 1969). The purpose of a general warranty deed is to indemnify the purchaser against the loss or injury he may sustain by a failure or defect in the vendor's title. *City of Beaumont v. Moore*, 202 S.W.2d 448, 453 (Tex. 1947). The grantor warrants that he will restore the purchase price to the grantee if the land is entirely lost. *Id.*

Benson conveyed the property to Saravia by a general warranty deed. Benson warranted that the property was not subject to any debts or liens. In consideration for the property, Saravia paid $60,000 plus $13,421.72 in delinquent property taxes. Saravia also has undertaken the expense of defending his title. Because we have concluded that Saravia has title to the property pursuant to a general warranty deed, we remand to the trial court his claims against Benson for breach of that deed.

## Conclusion

The trial court erred in its determination of title and in setting aside foreclosure of a lien on the property for payment of outstanding debt. Accordingly, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.