In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-18-00390-CV**

**SAMSON EXPLORATION, LLC, Appellant**

**V.**

**CHARLES G. HOOKS III, ET AL, Appellees**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. B-173,008-B**

## MEMORANDUM OPINION

We are asked to determine, among other issues, what constitutes an unconditional tender of payment sufficient to stop the accrual of post-judgment interest. Samson Exploration, LLC, previously known as Samson Lone Star, LP, (Samson) appeals the trial court's denial of its motion for satisfaction of judgment concerning post-judgment interest owed by Samson and granting of the Hooks's motion to maintain Samson's supersedeas bond until full payment of final judgment. Samson argues that the trial court erred when it denied Samson's motion for

satisfaction of judgment and ordered Samson to pay an additional $3,434,279.00 in post-judgment interest because the trial court did not properly apply the Finance Code in calculating the accrual of post-judgment interest as it relates to appellate extensions, and erred in failing to consider partial payments by Samson as unconditional tenders, thereby arresting the accrual of post-judgment interest on the judgment amount after crediting each partial payment at the time they are tendered against the remaining balance owed. For the reasons explained below, we affirm the trial court's judgment in part and reverse and remand in part.

## Procedural History[1]

Appellees, Charles E. Hooks III, et al, (Hooks) sued Samson for violations, including breach of contract and fraud, of a mineral lease of land owned by Hooks and leased by Samson. A jury found that Samson violated the terms of the lease, among other issues, and awarded Hooks a judgment that "exceeded $22 million dollars." The judgment of the trial court contained the following provision:

---

[1] It is not necessary for our resolution of the appeal to recite the extensive background of this case. Therefore, we will only explain the procedural history necessary for our review.

IT IS FURTHER ORDERED, ADJUDICATED, AND DECREED that, in addition to the foregoing, Plaintiffs shall have and recover from Samson post-judgment interest on the total amount of this judgment, including damages, attorneys' fees, expert witness fees, and costs of court, at the rate of 18%, compounded annually.

Samson appealed the jury's verdict, and the First Court of Appeals affirmed in part and reversed and rendered in part the trial court's judgment. *Samson Lone Star, Ltd. P'ship v. Hooks*, 389 S.W.3d 409, 440 (Tex. App.—Houston [1st Dist.] 2012), *aff'd in part, rev'd in part* 457 S.W.3d 52 (Tex. 2015). The appellate court affirmed only the trial court's judgment award of $52,257.22 to Hooks related to Samson's failure to pay ad valorem taxes and modified the post-judgment interest to 5%. *Id.* The court reversed "the remaining portions of the final judgment." *Id.* Samson paid to Hooks the $52,257.22 plus accrued interest at 5%, totaling $62,025.47. Hooks refused the payment. According to Samson, this amount was "stipulated by the parties." The payment reflected the following language:

> Samson has previously tendered this payment directly to Plaintiffs and Plaintiffs' counsel, but Samson's tenders have been refused. Samson will cooperate with a motion by Plaintiffs to withdraw, for Plaintiffs, this sum from the Court's Registry, and with any motion Plaintiffs may make to have this sum placed in an interest-bearing account.

Samson deposited the money into the registry of the trial court.

Hooks then appealed to the Texas Supreme Court. *See Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52 (Tex. 2015). The Supreme Court reversed the court of appeals on the issues of limitations for fraud, the most-favored-nations clause,

3

limitations for breach of offset provisions, and attorneys' fees. *See id.* at 70. It also affirmed in part and reversed in part post-judgment interest, holding that "to the extent Hooks recovers for past due royalties, he is entitled to an 18% interest rate[,]" and a 5% post-judgment interest rate on all other recoveries. *Id.* at 69–70. On remand, the First Court of Appeals modified the trial court's judgment regarding unpooling damages, fraud damages representing the formation-production damages, the most-favored-nations damages and post-judgment interest rate, stating the post-judgment interest rate will accrue at "an 18% rate for past-due royalties . . . and a 5% interest rate for other recoveries." *Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 34–35 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (Supp. Op.).

Samson thereafter paid the sum of $1,793,314.89 to Hooks based on its calculation of "final portions of the judgment plus post-judgment interest[,]" that Samson believed the Texas Supreme Court mandate made final. When Hooks refused the payment, Samson filed a motion with the trial court requesting the payment amount be deposited into the registry of the court. The following language accompanied Samson's payment:

> Samson has previously tendered this payment directly to Plaintiffs and Plaintiffs' counsel, but Samson's tenders have been refused. Samson will cooperate with a motion by Plaintiffs to withdraw . . . this sum from the Court's Registry, and with any motion Plaintiffs may make to have this sum placed in an interest-bearing account.

The trial court granted Samson's motion in part and ordered the amount deposited with the district clerk be applied toward "satisfaction of those claims made final by the January 30, 2015 Opinion and May 1, 2015 Mandate of the Texas Supreme Court[.]"

Simultaneously with its partial payment to Hooks, Samson appealed to the Texas Supreme Court. The Supreme Court denied Samson's petition for review. *Samson Lone Star, Ltd. P'ship v. Hooks*, 16-0776, 2018 Tex. LEXIS 80, *1 (Tex. Jan. 26, 2018). Samson then attempted to make a final payment to Hooks reflecting the "total unpaid portion of the judgment of $25,416,097.73." Samson offered this amount to Hooks as payment for the full judgment and represented to Hooks it would "forego" a petition for rehearing to the Texas Supreme Court if Hooks accepted the amount as payment in full for the judgment. Samson argues that this was not a "voluntary payment" to Hooks because, Samson included language tracking the Texas Supreme Court in *Miga I* and *Miga II. See Miga v. Jensen*, 96 S.W.3d 207 (Tex. 2002) (*Miga I*); *see also Miga v. Jensen*, 299 S.W.3d 98 (Tex. 2009) (*Miga II*).

> Samson explicitly reserves, and does not waive, its rights to (a) challenge the judgment giving rise to the Remaining Final Judgment Amount, both in the Texas Supreme Court and in any other courts to which the case might be remanded; and (b) if the challenge is successful, recover the Remaining Final Judgment Amount plus interest from Plaintiffs and their attorneys representing them. Accordingly, any overpayment is not a "voluntary" payment but rather

5

should be returned to Samson or applied to any amounts owed for any claims under this case. (citations omitted.)

Hooks refused the attempted payment but did not object to the amount being deposited into the registry of the court. Samson again included the following language with its deposit into the court's registry.

Samson has previously tendered this payment directly to Plaintiffs and Plaintiffs' counsel by the letter dated February 12, 2018, . . . but Plaintiffs have not accepted that tender. Samson will cooperate with a motion by Plaintiffs to withdraw, for Plaintiffs, this sum from the Court's registry, and with any motion Plaintiffs may make to have this sum placed in an interest-bearing account.

The Texas Supreme Court denied Samson's motion for rehearing. *Samson Lone Star, Ltd. P'ship v. Hooks*, 16-0776, 2018 Tex. LEXIS 460, *1 (Tex. June 1, 2018). Thereafter, Hooks and Samson submitted an agreed order requesting that the trial court release to Hooks all sums deposited by Samson from the registry of the court. The money was released to Hooks.

Subsequently, Samson filed a Motion for Entry of Satisfaction of Judgment. Hooks opposed Samson's motion and requested the court maintain Samson's supersedeas bond until Samson paid the judgment in full. Hooks asserted that Samson still owed Hooks money on the judgment, and Samson sought a court order "acknowledging that Samson has paid all amounts due and owing by virtue of the judgment of this case." The trial court denied Samson's motion and ordered that

Samson pay an additional $3,434,279.00 to Hooks, "plus subsequent post-judgment interest[.]" Samson timely filed this appeal.

## Accrual of Post-judgment Interest

In its first issue, Samson argues that the trial court erred by failing to properly apply the Finance Code when calculating post-judgment interest. *See* Tex. Fin. Code Ann. § 304.005. According to Samson, the post-judgment interest should not have accrued during times of Hooks' appellate extensions and therefore, the trial court's judgment is in direct violation of section 304.005(b) of the Finance Code. *See id.* Samson contends that "post-judgment interest statutes operate on judgments even when the judgments do not reference those statutes."

The assessment of when post-judgment interest begins to accrue is a matter of statutory interpretation, subject to *de novo* review. *Long v. Castle Tex. Prod. LP.*, 426 S.W.3d 73, 78 (Tex. 2014). "Our fundamental goal when reading statutes 'is to ascertain and give effect to the Legislature's intent.'" *Cadena Comercial USA Corp. v. Tex. Alcoholic Bev. Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017) (quoting *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012)). "To do this, we look to and rely on the plain meaning of a statute's words as expressing legislative intent unless a different meaning is supplied, is apparent from the context, or the plain meaning of the words leads to absurd or nonsensical results." *Id.* (citation omitted). Section 304.005 states the following regarding post-judgment interest accrual:

a) Except as provided by Subsection (b), post-judgment interest on a money judgment of a court in this state accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied.

(b) If a case is appealed and a motion for extension of time to file a brief is granted for a party who was a claimant at trial, interest does not accrue for the period of extension.

Tex. Fin. Code Ann. § 304.005. The 2008 judgment of the trial court reflects the following language:

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, in addition to the foregoing, Plaintiffs shall have and recover from Samson post-judgment interest on the total amount of this judgment, including damages, attorneys' fees, expert witness fees, and costs of court, at the rate of 18% compounded annually.

The 2008 judgment is silent as to when post-judgment interest begins to accrue or if it ceases to accrue during periods when Hooks, as the claimants in the trial court, obtained appellate briefing extensions. The Supreme Court has applied the Finance Code to fill in gaps in contracts. *See Hooks*, 457 S.W.3d at 69–70 (explaining that where a contract does not specify an interest rate, the rate is to be determined pursuant to the Finance Code); *see also Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 189 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (discussing Finance Code section 304.00l's applicability to silent judgments and holding that "[the Appellee] is statutorily entitled to post-judgment interest despite the trial court's failure to award such interest in the judgment").

8

Hooks challenges section 304.005's applicability to the 2008 judgment by arguing that the judgment is not silent and "[u]nlike cases where the judgment simply does not address interest at all, the judgment here says exactly what the interest rate shall be and exactly how frequently the interest shall compound." According to Hooks, the judgment is clear on the rate of post-judgment interest and how the interest should be calculated. Any deviation would go against the direct language of the judgment signed by the trial court. Notably, Hooks does not argue that subsection 304.005(a) is inapplicable to the 2008 judgment despite its silence regarding the start date of post-judgment interest accrual. Hooks only states that "[t]here is no silence."

We are unpersuaded by Hooks's argument. Without the application of section 304.005, the judgment would be silent as to the start date for accrual of post-judgment interest. Hooks cannot rely on one aspect of the statute without applying the entire statute.

> When interpreting statutes[,] we try to give effect to legislative intent. "Legislative intent remains the polestar of statutory construction." However, it is cardinal law in Texas that a court construes a statute, "first, by looking to the plain and common meaning of the statute's words." If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. Further, if a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. As our Court said long ago: When the purpose of a legislative enactment is obvious from the language of the law itself, there is nothing left to construction. In such case it is vain to ask the

9

courts to attempt to liberate an invisible spirit, supposed to live concealed within the body of the law.

*Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999) (citations omitted). We review the language of the statute as a whole to determine the legislature's intent.

> [W]ords and phrases are not to be considered in isolation, but rather in the context of the statute as a whole. Put differently, our objective is not to take definitions and mechanically tack them together—as [Appellant] claims the court of appeals did—rather, we consider the context and framework of the entire statute and meld its words into a cohesive reflection of legislative intent.

*Cadena Comercial USA Corp.*, 518 S.W.3d at 326 (internal citations omitted). Section 304.005(b) requires that any appellate briefing delays obtained by the claimant abate the accrual of post-judgment interest. *See* Tex. Fin. Code Ann. § 304.005(b). We are not to fragment the statute to support one version of an interpretation of 304.005. *See Cadena Comercial USA Corp.*, 518 S.W.3d at 326.

Given the judgment's silence regarding the commencement date for accrual of post-judgment interest and the cessation of interest accrual during periods of a trial court claimant's appellate briefing extensions, the plain language of the statute requires this Court to apply not only section 304.005(a), but also 304.005(b). *See* Tex. Fin. Code Ann. § 304.005. Subsection (a) expressly references Subsection (b)'s exception to the accrual of post-judgment interest between "the date the judgment is rendered and ending on the date the judgment is satisfied." *See id.* To make sure we

10

properly apply Subsection (a), we must also look to the exception provided in Subsection (b). *See id.*

Accordingly, Samson is entitled to a recalculation of post-judgment interest by the trial court which does not include accrual of post-judgment interest for periods of appellate briefing extensions obtained by Hooks, the trial court claimants. *See Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 162 (Tex. 2014) (explaining that in section 304.005(b), "[a]nother important factor comes into play and asks whether, on appeal . . . [post]judgment interest does not accrue for the period of any extension" moved for by the claimant and granted); *see also Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, No. 03-10-00826-CV, 2014 WL 6705741, at *3 (Tex. App.—Austin Nov. 14, 2014, no pet.) (mem. op.) (stating on remand that any calculation of post-judgment interest must subtract appellate briefing extensions granted the claimant in the trial court by either the court of appeals or the supreme court).[2] Hooks has failed to show as a matter of law that

___

[2] We note that Hooks argues that any appellate extensions moved for and granted on behalf of Hooks was in large part to respond to Samson's extensions or a "mirror-image motion" although they may not have needed an extension. Hook describes this as common practice used to "promote orderly prosecution of the appeal by preventing the briefing schedule from becoming staggered." The Austin Court of Appeals dismissed a similar argument as "facially appealing" but concluding that the Finance Code "forecloses it." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, No. 03-10-00826-CV, 2014 WL 6705741, at *3 (Tex. App.—Austin Nov. 14, 2014, no pet.) (mem. op.); *see also* Tex. Fin. Code Ann. 304.005(b). It concluded that the plain meaning of the statute "simply and plainly . . . defines the period for which interest does not accrue solely in terms of the

subsection 304.005(b) is inapplicable to the judgment. Therefore, the trial court erred when it refused to apply section 304.005(b) in the post-judgment interest calculation. We sustain Samson's first issue.

## Samson's Partial Payments to Hooks

In its second issue, Samson argues that its partial payments to Hooks throughout the appellate process were effective unconditional tenders and served to arrest accrual of post-judgment interest on the amounts paid. According to Samson, Hooks's opposition to the tender of the partial payments is in violation of Texas law and serves only to punish Samson. While we disagree that Samson's payments operated as valid tenders such that they stopped the accrual of post-judgment interest in its entirety, Samson's partial payments should have been considered to reduce the post-judgment interest amounts owed. *See Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 490 (Tex. App.—Houston [14th Dist.] 2016, pet. denied); *Hand & Wrist Ctr. of Hous., P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 721 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

---

extension that was *granted for* a claimant at trial [and i]t does not address, or suggest that we may consider, the effect of such an extension on the appellate process of the claimant's reasons for seeking such an extension." *Waste Mgmt. of Tex. Inv.*, 2014 WL 6705741, at *3 (citations omitted).

## The Payments

"Post-judgment interest is not a punishment inflicted on a judgment debtor for exercising the right to appeal. Instead, like pre-judgment interest, post-judgment interest is simply compensation for a judgment creditor's lost opportunity to invest the money awarded as damages at trial." *Miga I*, 96 S.W.3d at 212 (citation omitted). "The party asserting a valid tender has the burden of proving it." *Church v. Rodriguez*, 767 S.W.2d 898, 901 (Tex. App.—Corpus Christi 1989, no writ) (citing *Arguelles v. Kaplan*, 736 S.W.2d 782, 784 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.); *C.F. Bean Corp. v. Rodriguez*, 583 S.W.2d 900, 901 (Tex. Civ. App.—Corpus Christi 1979, no writ)). "A tender is an unconditional offer by a debtor to pay another a sum not less in amount than that due on a specified debt or obligation." *Saravia v. Benson*, 433 S.W.3d 658, 663 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Baucum v. Great Am. Ins. Co. of New York*, 370 S.W.2d 863, 866 (Tex. 1963)). "[A] tender of payment must include everything to which the creditor is entitled, and a tender of any less sum is ineffective." *See Note Inv. Group, Inc. v. Assocs. First Capital Corp.*, 476 S.W.3d 463, 493 (Tex. App.—Beaumont 2015, no pet.) (citation omitted). A partial tender will not serve to stop the accrual of interest. *Id.* The elements required to establish a valid tender are: (1) an unconditional offer; and (2) production of funds in the entire amount due. *See Baucum*, 370 S.W.2d at 866; *Anglo Dutch*, 522 S.W.3d at 489. As the party asserting valid tender to stop the

13

accrual of post-judgment interest, Samson bears the burden of proving these elements. *See Anglo-Dutch*, 522 S.W.3d at 489. Because each payment made by Samson to Hooks was not in the full amount due to Hooks, each payment was not a valid tender. *See id.*

Hooks argues Samson's attempted tenders of payments were not unconditional because Samson made partial payments conditioned on their right to appeal the judgment. With each of the tenders, Samson included the following language:

*2011 Payment of $60,124.44*

[O]n behalf of Samson, I am now forwarding you a check in the amount of $60,124.44, which is the amount stipulated at trial plus interest at the rate of 5%. This payment is in trust for your clients in the referenced action and is being paid pursuant to the Stipulation received into evidence as Court Exhibit A[.] *This amount is not a payment of the trial court's Judgment*, now reversed, and Samson is not acquiescing in any way in the trial court's Judgment.

*2016 Payment of $1,793,314.89*

Samson Exploration, LLC ("Samson") recognizes that the portion of the trial court's December 11, 2008 Judgment (the "Judgment") related to the favored nations damages and the portion of the Judgment related to the attorneys' fees award (collectively, the "Resolved Issues") are now final and are not subject to any appellate challenge. Accordingly, Samson is arranging *to pay the full amount of the Resolved Issues*, plus post-judgment interest thereon, in order to stop the running of additional post-judgment interest on the Resolved Issues *pending Samson's appeal of the other erroneous portions of the Judgment.* Samson calculates the full amount owed on the Resolved Issues plus post-judgment interest through November 7, 2016 to be $1,793,314.89 (the "Resolved Payment Amount").

14

. . .

Samson hereby tenders the Resolved Payment Amount to plaintiffs *as full satisfaction of the Resolved Issues* and post-judgment interest thereon.

*2018 Payment of $25,416,097.73*

[T]he *total unpaid portion of the judgment* is $25,416,097.73 (the "Remaining Final Judgment Amount).

. . .

Samson hereby tenders the *Remaining Final Judgment Amount*, along with the First and Second Deposits, to Plaintiffs in full satisfaction of the Hooks Final Judgment.

. . .

Samson explicitly reserves, and does not waive, its rights to (a) challenge the judgment giving rise to the Remaining Final Judgment Amount, both in the Texas Supreme Court and in any other courts to which the case might be remanded; and (b) if the challenge is successful, recover the Remaining Final Judgment Amount plus interest from Plaintiffs and their attorneys representing them. In that situation, the payment of the Final Judgment Amount is not a "voluntary" payment pursuant to the Supreme Court's opinions in *Miga I* and *Miga II.*

(Internal citations omitted, emphasis added.)

None of these payments were for the full amount Samson owed the Hooks as evidenced by the very language it employed to accompany these payments. Samson used phrases like "as full satisfaction of the [r]esolved [i]ssues," "total unpaid portion of the judgment," and "[r]emaining [f]inal [j]udgment [a]mount" which

15

indicate their intention to pay select portions of the judgment. To establish a valid tender, Samson bore the burden of proving that it made an unconditional offer *and* produced the full amount owed. *See Bray v. Cadle Co.*, 880 S.W.2d 813, 818 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (emphasis added). Samson failed to do so.[3] However, Samson did establish that it made partial payments on the judgment by depositing funds into the court's registry and offering to cooperate with the Hooks regarding any desired withdrawals they wanted to make, and those payments should be factored into a post-judgment interest calculation as discussed below.

### Partial Payments and Declining-Principal Interest

As we have previously discussed, "[a] tender generally must include everything the creditor is entitled to, and a tender of any less sum is not effective."

---

[3] The Texas Supreme Court discussed finality of judgments and post-judgment interest in *Long v. Castle Texas Production Ltd. Partnership*, explaining that "finality for the purpose of appeal bears the closest resemblance to finality for the purpose of accruing post-judgment interest." 426 S.W.3d 73, 78 (Tex. 2014). In *Long*, the Supreme Court held for a judgment to be final and subject to appellate review, it must "dispose[] of all pending parties and claims in the record," and the court analogized that the same must be done for the accrual of post-judgment interest. *Id.* at 78–79.

> A judgment that disposes of all parties and claims begins appellate deadlines and generally triggers the accrual of post-judgment interest. But if an appellate court reverses that final judgment and remands for further proceedings, the original, erroneous trial court judgment is no longer final because it no longer disposes of all parties and claims. Generally then, if a remand results in multiple trial court judgments, post-judgment interest accrues from the date of the *final* judgment (rather than the original, erroneous judgment).

*Id.* (citations omitted).

16

*Anglo-Dutch*, 522 S.W.3d at 490 (citation omitted). "[T]he general rule [is] that paying part of a debt does not bar the further accrual of interest." *Id.* (citations omitted). "However, '[t]he [declining-principal] interest framework used in *Brainard* [*v. Trinity Universal Ins. Co.*, 216 S.W.3d 809 (Tex. 2006)] and *Battaglia* [*v. Alexander*, 177 S.W.3d 893 (Tex. 2005)] applies not only to partial settlements, but also . . . to partial payments of obligations that are unconditionally tendered and accepted.'" *Id.* (quoting *Hand & Wrist Ctr. of Hous.*, 401 S.W.3d at 721); *see also Miga I*, 96 S.W.3d at 212 (explaining that post-judgment interest should not accrue on "an unconditional tender of the money awarded," given to a judgment creditor that he "may invest it as he chooses").

Samson argues that although the deposit of partial payments to the registry of the court does not stop post-judgment interest in its totality, Samson is entitled to be credited for any payments in the calculation of post-judgment interest. We agree. The Supreme Court has been clear that partial payments toward prejudgment interest should be credited in calculating prejudgment interest. In both *Brainard* and *Battaglia,* the Supreme Court applied the declining-principal interest framework to prejudgment interest.

> When a defendant is not jointly and severally liable for the damages a claimant has sustained, this means the "principal" is only the specified percentage of the "damages found by the trier of fact." Interest would accrue only on that amount, and a settlement payment would be applied first to accrued interest on that amount as of the date of the settlement

17

payment, then to any remaining principal, and interest would accrue on any remaining principal from that date forward.

*Battaglia*, 177 S.W.3d at 908 (citations omitted).

> [C]ompensation other than for lost use of money is not interest but a windfall for the claimant and a penalty to the defendant. We concluded that, to satisfy the purpose of prejudgment interest, settlements must be credited periodically, according to the date they are received. This approach, known as the "declining principal" formula, is the proper way to apply credits in the calculation of prejudgment interest. In *Battaglia,* we concluded that "[a] settlement payment should be credited first to accrued prejudgment interest as of the date the settlement payment was made, then to 'principal,' thereby reducing or perhaps eliminating prejudgment interest from that point in time forward." . . . Under the "declining principal" formula, the trial court is to consider the date on which the insured received each payment.

*Brainard*, 216 S.W.3d at 816 (citations omitted). The Texas Supreme Court agreed in *Brainard* that the plaintiff should not continue to earn interest on $1,010,000 in damages despite having already received $1,005,000 in compensation. *See id*

This same method should be applied to post-judgment payments. Our sister courts have applied this method to post-judgment calculations. *See First State Bank of Rogers v. Wallace*, 788 S.W.2d 41, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ) (noting that when "interest has accrued on the funds in the registry after the date of judgment and prior to the withdrawal of the funds by appellees[,] [s]uch interest shall be credited to the post-judgment interest assessed against First State Bank on the amount paid in to the trial court's registry"); *see also Lee v. Lee*, 528 S.W.3d 201, 220 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (explaining

18

that a judgment should be credited with offsets in determining post-judgment interest, "then those amounts would further reduce the amount of post-judgment interest that continued to compound" ); *Rosenthal v. Rosenthal*, Nos. 01-99-00058-CV, 01–00–00259–CV, 2001 WL 1383132, at *8 (Tex. App.—Houston [1st Dist.] Nov. 8, 2001, pet. denied) (holding that a wife should not have to pay post-judgment interest for the time period that the husband possessed the funds that he obtained by garnishment). While we agree with Hooks that Samson's partial payments do not suspend post-judgment interest in its entirety, the trial court erred when it did not give Samson credit for its partial payments under the declining-principal interest framework outlined in both *Brainard* and *Battaglia,* in calculating post-judgment interest.

## Conclusion

In conclusion, we affirm the trial court's judgment that the 2011, 2016, 2018 were not valid tenders that would cease the accrual of post-judgment interest in its entirety. We reverse and remand to the trial court and order that the trial court calculate the appropriate days of Hooks' appellate briefing extensions as required under section 304.005(b) in determining the amount of post-judgment interest Samson owes. We further conclude Samson's partial payments should be factored into the recalculation of post-judgment interest under the declining-principal interest

19

framework outlined in *Battaglia* and *Brainard.* Given our resolution of that issue, we need not reach Samson's remaining issue on appeal. *See* Tex. R. App. P. 47.1.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

_____
CHARLES KREGER
Justice

Submitted on June 6, 2019
Opinion Delivered September 17, 2020

Before Kreger, Horton and Johnson, JJ.